## BURGIE v. BAILEY.

### Opinion delivered July 12, 1909.

1. EVIDENCE—ADMISSIBILITY OF PROOF OF PAROL CONTRACT.—The rule forbidding the introduction of a verbal contract to add to a written one is not violated by permitting a separate and independent verbal contract to be proved, relating to a matter not embraced in the written contract. (Page 388.)

2. FRAUDS, STATUTE OF—ASSUMING ANOTHER'S DEBT.—An agreement between A and B that the former will assume the indebtedness of the latter, already incurred, is an original undertaking, and is not within the statute of frauds. (Page 388.)

Appeal from Chicot Circuit Court; Henry W. Wells, Judge; reversed.

Harry E. Cook, for appellant.

The court erred in striking out the testimony of Hauptman and Matthews, and in refusing to admit the testimony of Robinson and Beadel. This testimony was admissible to establish the promise of Bailey to settle Jackson's outstanding bills, and to show a new, original and valuable consideration actuating Bailey to make the promise. Where an agreement to pay the debt of another is founded upon a new and original consideration of benefit or harm between the new contracting parties, it does not fall within the statute of frauds. 64 Ark. 462; 8 Johns. 29; 12 Ark. 174; 31 Ark. 613; 25 Ark. 292; 20 Tex. 329; 1 Brandt,

Suretyship and Guaranty, § 70. No consideration moved to Jackson. He delivered to Bailey his personal interest, credits and bank account. Beadel's testimony would have shown that no consideration moved to Jackson save Bailey's assumption of the indebtedness and that it was understood in his presence that Bailey assumed and would pay it. 75 Ark. 89; 55 Ark. 112; 71 Ark. 408.

*E. A. Bolton* and *Wm. Kirten,* for appellee.

The contracts were in writing, and parol evidence was not admissible to add to or take from them. 67 Ark. 62; 66 Ark. 393; 77 Ark. 431.

HART, J. On the 24th day of November, 1905, L. & E. Wertheimer brought suit before a justice of the peace in Chicot County against L. C. Jackson for $292.50 alleged to be due them by Jackson for whisky and other merchandise sold to him.

Jackson answered and admitted the indebtedness. He also filed a cross complaint against H. F. Bailey and Gaines Robinson, alleging that he had purchased the license, stock of goods and place of business of said H. F. Bailey for the sum of $4,812.20, on which he had paid, in three monthly installments, $1,800; that, becoming dissatisfied with the business and aware that he had paid a grossly excessive price for same, he surrendered to said Bailey the said business, in which he had invested $300 of his own money and turned over to said Bailey, $230 that he had in cash in the bank at the time, submitting to the said Bailey invoices of all goods purchased and all unpaid bills; that, in consideration of his surrendering said business and all of his interest in the $300 of his personal funds invested therein and the $230 check for cash in bank, the said Bailey was then and there to assume and pay off the outstanding indebtedness of Jackson, consisting of the claim of the Wertheimers and another small claim, amounting to less than $30. He further alleged in his cross-complaint that Bailey had on the same day traded said business to Gaines Robinson for a sum amounting to $3,544.20, being $815 in excess of the amount due Bailey from Jackson, which said excess was to cover the outstanding bills and to pay for some goods used by Jackson in his business which were not covered in the original trade between Jackson and Bailey. He asked that he be grant-

ed judgment against Bailey and Robinson for the sum of $292.50, the amount claimed by the Wertheimers.

On November 29, Bailey answered the cross-complaint, denying that he assumed the unpaid bills of Jackson, including that of the Wertheimers, and alleging that Jackson had on his books outstanding accounts amounting to about twice as much as Jackson owed for goods, and that the assumption was by Robinson, and not by himself, Bailey, and he further undertook to account for the $815 excess, in which he included $320 for four months' rent, being for the months of September, October, November and December, 1905, when Jackson surrendered possession of the premises on September 6, delivering the same into the possession of H. F. Bailey, who placed Gaines Robinson in possession.

The court rendered judgment in favor of L. & E. Wertheimer against L. C. Jackson for $292.50, and rendered judgment on the cross complaint in favor of L. C. Jackson and against H. F. Bailey and Gaines Robinson for the same amount. From this judgment Bailey appealed to the circuit court, giving bond with John G. B. Simms as surety. Execution was issued on the judgment in favor of Wertheimer and against Jackson. The same was stayed for six months, and then paid by Jackson and his sureties.

During his lifetime, Jackson assigned and transferred his judgment against Bailey to Samuel Burgie and Samuel Epstein, who had advanced him money, and upon his death, same having been suggested to the court, Samuel Burgie was appointed special administrator to conduct the suit in circuit court. In the circuit court the cause was treated by the parties as a suit by Jackson against Bailey for $292.50, the amount which L. & E. Wertheimer had recovered against him.

Jackson introduced in evidence the original contract of purchase from Bailey to him. It read as follows: "This agreement between H. F. Bailey & Co., of the first part, and L. C. Jackson, of the second part, witnesseth: Said first parties hereby sell and transfer to second party all its stock of whisky, beer, cigars and fixtures, unexpired license at cost, with 10 per cent. added as cost of carriage on said stock. This sale is conditional, and considered as a lease during the period of installment payments herein agreed upon, and said business is to continue under

the old firm name and by Jackson as agent. Said Jackson shall pay for said property in equal monthly installments at the end of each month, beginning June the first next, the amount to be specified in the notes to be fixed by the invoice of said property, and said notes and invoice are a part of this contract. Said Jackson agrees to pay the rent due by the said first parties at the rate of $100 per month in advance, and to have possession of all rented property. Said Jackson agrees to conduct an orderly business, and, if he fails so to do, to return said property to first party. Said first parties agree to aid and assist in every way they can to secure said business to be a success, and if the trade of the business becomes at any time so dull as to hinder second party in his monthly payments, first party agrees to extend same a reasonable time. Said second party agrees to use from the warehouse of the first party exclusively such goods as are stored therein, and pay cost for the same, or cost and 10 per cent. carriage, as they are withdrawn and needed by second party in the business. It is understood the invoice of the stock of goods and fixtures, which are situated in the Robinson building, and which are the goods leased hereby, amounts to $4,812.50, and the unexpired license amounts to $800. The second party's notes are eight in number, and for $601.50 each, and when said notes are paid the property belongs to the said Jackson, and said Bailey & Company will execute a bill of sale for all the same, and all of said notes draw 8 per cent. interest from date until paid. The jugs and bottles are included in this sale, and are partly in warehouse."

He also introduced W. D. Hauptman and C. M. Mathews, who testified in substance the matters hereinbefore set out in his cross-complaint.

Bailey, who became a witness for himself, denied the matters set up in Jackson's cross-complaint, and in substance said that he had not agreed with Jackson to pay his outstanding indebtedness, incurred while he was running said saloon. He also introduced the written contracts between Jackson and Robinson, and between Robinson and himself. They read as follows:
"Know All Men by These Presents:

"That, whereas, Gaines Robinson, party of the first part, desires to purchase from L. C. Jackson, party of the second part

herein, the saloon business now owned by the said party of the second part, and situated in the Robinson building in the town of Lake Village, Arkansas; and, whereas, the said party of the second part is indebted to one H. F. Bailey in the sum of $3,544.20 (thirty-five hundred and forty-four and 20-100 dollars), now the party of the first part agrees to assume said indebtedness and pay the same unto the said H. F. Bailey according to the tenor of a certain contract now existing between the said H. F. Bailey and said party of the second part, bearing date the first day of May, 1905, where the said Bailey sold unto the said party of the second part the aforesaid saloon property, and the said party of the second part for the consideration aforesaid agrees to and by this contract does sell, transfer, assign and convey unto the said Gaines Robinson, party of the first part hereto, all merchandise, goods and wares, and all fixtures and book accounts in said saloon building, and also transfers unto the said Robinson his lease upon said building, and all other rights, things and property which the said Jackson acquired from the said Bailey by the aforedescribed contract, and the said Jackson does immediately upon the signing of this contract deliver the possession of the aforedescribed property unto the said Robinson.

"In testimony whereof witness our hands this 6th day of September, 1905.

"L. C. Jackson,
"Gaines Robinson."

"Know All Men by These Presents:

"Whereas, L. C. Jackson has this day sold and transferred his saloon business, situated in the Robinson building, unto Gaines Robinson, and the said Gaines Robinson has agreed to and with the said Jackson to assume the said Jackson's indebtedness to me, amounting to thirty-five hundred and forty-four and twenty-one hundredths dollars, and the said Gaines Robinson does sign this instrument, and agree and covenant with me that he will assume and pay said sum of money. Now, in consideration of the premises above set out, I hereby release the said L. C. Jackson from any further and all liability to me on account of said indebtedness, and I, Gaines Robinson, hereby agree to and with H. F. Bailey that I will pay unto the said H. F. Bailey the aforesaid indebtedness.

"Witness our hands and seals this the 6th day of September, 1905.

(Signed)    "Gaines Robinson,<br>
"H. F. Bailey."

ŧ.

Bailey then moved the court to strike out the testimony of Hauptman and Mathews because it varied the terms of the written contract. The court excluded the testimony. Jackson then offered to prove by Gaines Robinson and by Allen Beadel, the attorney who prepared the contracts, that the sale was made by Bailey to Robinson, and that Bailey agreed to pay the debts incurred by Jackson in running the business, but the court refused to permit the introduction of the testimony. The jury was then instructed to return a verdict for Bailey, which was accordingly done. Jackson has duly prosecuted an appeal from the judgment rendered.

The court erred in excluding the testimony of Hauptman and Mathews, and in refusing that of Robinson and Beadel. The testimony did not go to the extent of varying or contradicting the written contracts. It tended to show a separate and independent verbal contract between Bailey and Jackson, and was admissible for that purpose. *Ramsey* v. *Capshaw,* 71 Ark. 408.

It was not a collateral undertaking on the part of Bailey to answer for the default of Jackson, but it was an original undertaking on his part for a valuable consideration to pay the debts Jackson incurred while running the business, and was not required to be in writing. The question of the truth or falsity of the testimony should have been submitted to the jury. *Gale* v. *Harp,* 64 Ark. 462.

For the error in excluding the testimony as indicated the judgment is reversed, and the cause remanded for a new trial.