HURLEY *v.* OLIVER.

Opinion delivered July 12, 1909.

1. APPEAL AND ERROR—STRIKING OUT ANSWER—WHEN HARMLESS.—Error of the court in striking out a paragraph of an answer was not prejudicial if the court admitted all the testimony offered by defendants on the issue raised by the paragraph, and it does not appear that defendants were prevented by the court's ruling from introducing any additional testimony upon the same issue. (Page 430.)

2. DAMAGES—BREACH OF CONTRACT—PROSPECTIVE PROFITS.—Where plaintiff undertook to do certain work for defendants, and was prevented from doing it by defendants' fault, he is entitled to the profits which the evidence makes it reasonably certain that he would have earned if defendants had carried out their contract. (Page 432.)

Appeal from Monroe Circuit Court; *Eugene Lankford,* Judge; affirmed.

*C. F. Greenlee,* for appellants.

1. It was error to strike out from the answer the 6th paragraph. If plaintiff rendered himself incapable by reason of intoxication of performing the duties resting upon him under the contract, defendants had the right to take the property away from his management and control. He thereby first violated the contract. 85 Ark. 596, 599.

2. Damages for breach of contract cannot be measured by the loss of expected profits where the latter are uncertain and speculative and depend upon so many contingencies that their loss cannot be traced with reasonable certainty to the breach. 12 N. W. 640; 11 N. W. 828; 111 Fed. 96; 57 Ark. 203; 69 Ark. 210, 222.

*Manning & Emerson,* for appellee.

1.  It was proper to strike out paragraph 6 from the answer. This was not a contract for employment of appellee by appellants to work for them in any capacity or to handle property for them, but a contract under which he was to sell them oak heading at a certain price and to buy their machinery at a certain price. It stated no defense to the action.  But, if it was a defense, all the legal testimony tending to prove the allegations of the paragraph was admitted without objections, and the court's instructions likewise treated such allegations as in issue.

2.  Loss of profits on account of a breach of contract is a proper measure of damages.  1 Sutherland on Damages, 113; 9 Exch. 341; 4 N. E. 264; 147 Fed. 65, 71.  In this case the expected profits can not only be traced to the breach of the contract, but are a part of it and arise from and grow out of the provisions of the contract itself.  91 Mich. 156; 51 N. W. 930; 16 N. W. 232; 29 N. W. 711; 68 Mich. 312; 36 N. W. 88; 106 Mich. 542; 64 N. W. 474; 78 Ark. 336; 110 Mich. 6; 67 W. W. 976; 114 Mich. 34; 26 Mich. 239; 112 N W. 820; 61 N. W. 273; 95 N. W. 757; 47 So. 332; 153 U. S. 540; 71 Ark. 408; 78 Ark. 336; 80 Ark. 228.

HART, J.  This is an action on contract brought by W. W. Oliver against F. W. Hurley and J. W. Ross, doing business under the firm name of Hurley & Ross, to recover damages for profits which he alleges he was prevented from earning by the defendants' breach of the following contract:

"This agreement, made this eighth day of February 1907, by and between Hurley & Ross, of Brinkley, Monroe County, Ark., and W. W. Oliver, also of Brinkley, Monroe County, Arkansas.

"Witnesseth that, in consideration of the sum of $2.50 per cubic cord, the said Oliver agrees to saw, cull, split, sap and stack on yard oak heading; said work to be done in first-class manner in every respect, same as is customary at Ross' factory, and as Hurley & Ross may from time to time direct.  The said Hurley & Ross agree to furnish the machinery to do said work. It is hereby understood that the said Oliver is to purchase said machinery from Hurley & Ross at its cost price, including freight and expenses of getting saws in place to saw by allowing

50 cents per cord to be credited every two weeks on the purchase of said machinery. Hurley & Ross agree to furnish the money every two weeks to pay off said Oliver's men from the amount due said Oliver in excess of the 50 cents per cord credited on purchase price of the machinery, as hereinbefore agreed. Hurley & Ross agree to furnish a man to look after timber, each party to this contract to pay one half of this timberman's wages. Said Oliver agrees to keep said machinery in good repair, excepting ordinary wear and tear, and to furnish all supplies. This contract to be effective during one year beginning with this date. Now, if the said Oliver does not faithfully perform his part of within contract, it is agreed he will forfeit to Hurley & Ross what payments may have been made on said machinery at the time of said failure, and that the machinery is the property of said Hurley & Ross until fully paid for by said Oliver in the manner as agreed above.

"Hurley & Ross, pr. F. W. Hurley.
"W. W. Oliver."

"Fitch Jones, witness."

Defendants admitted making the contract, but denied having committed a breach thereof, and denied that plaintiff could have made any profit therefrom. Among other defenses they interposed the following, which is called paragraph 6th:

"Defendants state that plaintiff, after entering into said contract, rendered himself incapable of the duties resting upon him by its terms by becoming intoxicated and continuing so on intoxicating liquors, his condition being such that a reasonable, prudent person would not entrust one in such condition with control and management of his property."

The facts, briefly stated, are as follows: Hurley & Ross are manufacturers of lumber at Brinkley, in Monroe County, Arkansas. Oliver had been engaged as a sawyer of tight barrel heading by Hurley & Ross and their precedecessors in business for a period of 22 years. Hurley & Ross made an examination of the oak timber supply near Penter's Bluff in Independence County, Arkansas, and, wishing to obtain this timber and have it sawed into heading, made the contract which is the foundation of this action. Both Oliver and Hurley & Ross believed the mill could be operated without a line shaft, and the mill was equipped

accordingly. After a trial, this was found to be impracticable, and the line shaft, pulleys and belts were ordered and directed to be shipped to Penter's Bluff to be placed on the mill. After the line shaft and pulleys had arrived and were put in their proper place for the operation of the mill, and about the time the belt arrived, but before it had been attached to the mill, Hurley & Ross, over the objections of Oliver, took the mill out and moved it away. They claim that they did this on account of the continued intoxication of Oliver. They say he became and continued intoxicated to such an extent as to render it unsafe and impracticable to leave him in charge of the mill. Oliver says they moved the mill because they found the freight rate on heading from Penter's Bluff was too high, and denies that he was intoxicated. Oliver claims that the average run of the mill would have been 20 days per month. That he could average sawing 12 cords per day, and that the expense of running the mill would not have been more than $15 per day. He based his estimate on his past experience as a sawyer. He also testified that there was sufficient timber accessible to run the mill at Penter's Bluff for one year, which was the life of the contract. Hurley & Ross adduced testimony tending to show that his profits at best could not have been more than the wages of a sawyer, which he could have saved by doing that work himself. Hurley & Ross were to pay for the timber.

There was a jury trial, and a verdict for plaintiff in the sum of $1,000. From the judgment rendered thereon the defendants have appealed.

In his motion for a new trial counsel for defendants set out numerous assignments of error, but in his brief only two questions are presented for our determination; and the remainder will be considered as waived or abandoned.

The first is that the court erred in sustaining plaintiff's motion to strike paragraph 6 from defendant's answer upon the ground that the same constituted no defense to the cause of action set forth in the complaint.

The second is that the the court erred in submitting the question of profits as the measure of damages to the jury. We shall consider them in the order named.

1. In response to the contention of counsel for the defendants that the court erred in striking out paragraph 6 of their

answer, counsel for plaintiffs say that all legal testimony offered by defendants to prove the allegations made in paragraph 6 of their answer was admitted without objection, and that this amounted to a reconsideration by the court of its former ruling in striking out that paragraph.

In the case of *Roach* v. *Richardson,* 84 Ark. 37, it was held: "Where, without objection on plaintiff's part, defendant directed his evidence to an issue not raised by the answer, and the trial court treated the issues as thus joined, the answer will be treated on appeal as amended to correspond with the proof."

Again in the case of *White River Railway Company* v. *Batesville & Winerva Telephone Co.,* 81 Ark. 195, it was held: "Appellant can not complain because the court refused to permit it to amend its answer if the court had already permitted it to adduce all the testimony bearing upon the issue sought to be raised by the amendment."

These decisions are in accord with the uniform holdings of the court on this subject, so it may be said here that if the court admitted all the testimony offered by the defendants on the issue raised by paragraph 6 of their answer, no possible prejudice could have resulted to them from its former action in striking out this paragraph. We have made a careful examination of the record, and find that all competent evidence on the question of plaintiff's intoxication, or of his excessive indulgence in intoxicating liquors that was offered was admitted without objection. For instance, Mr. Hurley, one of the defendants was asked:

Q. "Mr. Hurley, you stated awhile ago that you didn't want Mr. Oliver in charge of the mill when in an intoxicated condition. I will ask you if you know his disposition when he was less intoxicated." A. "Yes, sir; he has been on a spree, and would stay that way for a long time, and for that reason I was afraid on account of the conditions up there. He had started in a pretty good gait, and I was afraid to continue him." (Objection to the pretty good gait, ask that it be excluded). Court: "That isn't proper testimony." Here it will be observed that no objection was made to Hurley stating all the facts within his knowledge as to the nature and extent of plaintiff's intoxication, but only to his stating his conclusions from the facts to the jury.

The inferences to be drawn from the facts were matters for the jury to determine.

Again, objections were made when defendants attempted to introduce evidence as to reports they had received as to the extent of plaintiff's intoxication. The objection was proper because such testimony would be hearsay evidence. We find from an examination of the record that in every instance where the defendants offered competent evidence on the question of plaintiff's intoxication, it was admitted without objection. As we have already pointed out, this amounted to a reconsideration of its former ruling by the court; and if the defendants wished to introduce additional evidence on that point, they should have stated to the court that they were taken by surprise at the action of the court in changing its ruling, and should have asked that the case be continued, or the trial postponed, for the purpose of allowing them to procure the attendance of additional witnesses on that point. Not having done so, the presumption is that they introduced all the witnesses they could have procured on that issue, and they can not now complain. The court in its instructions to the jury based the right of recovery upon condition that the breach of the contract was made "without the fault of the plaintiff."

2. Was a loss of the profits on account of a breach of the contract the measure of damages?

The evidence of both Hurley and Oliver shows that the defendants were to furnish or pay for the timber, and that Oliver was to manufacture it into oak heading for a stated sum per cubic cord. Oliver had worked for the defendants a great many years as sawyer. His particular line of sawing was tight barrel heading. Hurley himself testified that he knew the profits that could be made by Oliver under the contract, and that they would consist mainly, if not wholly, of the fact that he could do his own sawing. These facts, and as well the contract itself, shows that is was one for personal services. Hence we think that the profits were in contemplation of the parties when the contract was made. This view is strengthened by the fact that the contract provided that Hurley & Ross were to furnish the machinery to do the work, and that Oliver was to purchase said machinery at cost price and to pay for the same by allowing

fifty cents per cord on the amount earned, to be credited every two weeks on the purchase price of said machinery. The contract further provided that the machinery was to remain the property of Hurley & Ross until paid for.

In the case of *Beekman Lumber Co.* v. *Kittrell,* 80 Ark. 228, it was held: "Where plaintiff entered into a contract to perform certain work for the defendant, which he was prevented from doing by the fault of the defendant, he is entitled to recover the profits which the evidence makes reasonably certain that he would have made had the defendant carried out its contract." Mr. Justice RIDDICK, who delivered the opinion of the court, said: "The rule in reference to the recovery of profits is thus stated in a recent work: 'The recovery of profits, as in the case of damages for the breach of contract in general, depends upon whether such profits were within the contemplation of the parties at the time the contract was made. If the profits are such as grow out of the contract itself, and are the direct and immediate result of its fulfillment, they form a proper item of damages.' 13 Cyc. 53, 54. Such damages 'must be certain both in their nature and in respect to the cause from which they proceed. It is against the policy of the law to allow profits as damages where such profits are remotely connected with the breach of contracts alleged, or where they are speculative, resting only upon conjectural evidence or the individual opinion of the parties or witnesses.' 13 Cyc. 53; *Spencer Medicine Co.* v. *Hall,* 78 Ark. 336."

The language of the learned judge which follows is especially pertinent as an application of these principles to the facts of the present case, and we adopt it for that purpose. It is as follows: "Now, in this case the plaintiff had entered into a contract to perform certain work for the defendant, which he was prevented from doing, as the jury found, by the fault of the defendant; and we are of the opinion that the profits which the evidence makes reasonably certain that plaintiff would have made had defendant carried out its contract may be recovered." See also *Ramsey* v. *Capshaw,* 71 Ark. 408. For a recent application of the rule, see *Blumenthal* v. *Bridges, ante* p. 212.

The contract by its terms was to be effective one year from its date. The evidence adduced by the plaintiff tends to show

that he had had long experience in sawing with a mill similar to the one named in the contract under consideration, and that he had averaged sawing from 12 to 15 cords per day. His testimony also showed that it could be run on an average of 20 days per month. The price of the heading to be received by the plaintiff was fixed by the contract, and the cost of manufacturing the heading was testified to by plaintiff and his witnesses. While this testimony was contradicted by that of the defendants, it is not our province to pass upon the weight of the testimony. The verdict of the jury is conclusive upon us, if there is any evidence to warrant it. It is sufficient to say that the verdict is sustained by the evidence.

We find no prejudicial error in the record, and the judgment will be affirmed.