Southwestern Telegraph & Telephone Company *v.*

Memphis Telephone Company.

Opinion delivered February 16, 1914.

1. Damages—breach of contract—punitive damages.—Appellant, without knowledge of the contract, purchased the controlling interest in a company which had entered into a contract with appellee. Appellant thereafter refused to carry out the terms of the contract. *Held,* under the facts, appellee was not entitled to punitive damages. (Page 481.)

2. Damages—prospective profits—breach of contract.—Where appellant purchased the controlling interest in a company which had

entered into a contract with appellee, and appellant thereafter refused to carry out its part of the contract; *held,* appellee is entitled to recover the amount expended by it in preparing for carrying out the contract, less the value to it of the amount expended, and also prospective profits which can be definitely ascertained.  (Page 484.)

3.  DAMAGES—BREACH OF CONTRACT—PROSPECTIVE PROFITS.—In an action for damages for loss of prospective profits caused by breach of contract, no damages can be recovered beyond the point where they can be assessed with reasonable certainty, and when they become conjectural.  (Page 485.)

Appeal from Mississippi Chancery Court, Osceola District; *Charles D. Frierson,* Chancellor, modified and affirmed.

STATEMENT BY THE COURT.

The Memphis Telephone Company instituted this suit, in the Osceola District of the Mississippi Chancery Court, against the Southwestern Telegraph & Telephone Company, the Tri-State Telephone Company and R. C. Rose, on November 10, 1911, asking damages for an alleged breach of the contract.  The complaint alleged, in substance, that the Tri-State Company owned and operated a telephone plant in northeast Arkansas, and was doing a long distance business in southeast Missouri, and in Tennessee, and that at the same time the Memphis Telephone Company was operating a telephone plant in Memphis, Tenn., and extending to other points in Mississippi and Tennessee; that on the 9th of September, 1910, the appellee entered into a contract with the Tri-State Telephone Company wherein the two companies agreed to construct a telephone line into the city of Memphis.  That at that time the Tri-State Company had a line to Munford in Tipton County, and going to Bedford, and from there to Millington connecting with the Tri-State Company exchange at Millington.  The contract provided for a division of tolls on an equal basis.  The Tri-State Company agreed to route all business originating upon its system, for points reached by the Memphis Company, over and upon the lines so to be constructed and through the Memphis Company; that the

contract should apply to all exchanges, or future exchanges, of either company, and the contract by its terms was to remain in force twenty-five years from and after the date of the completion of said line. That the parties had constructed the said telephone line according to the terms of the contract, and in doing so, plaintiffs expended the sum of $10,000 in the construction and equipment of its portion of said lines, which it completed some time during the latter part of July, 1911, and a few messages were transferred over same; that in July, 1911, the appellant obtained control of the Tri-State Company by purchasing stock of the stockholders therein at a price of about $150,000, and the Tri-State Company was completely merged in, and absorbed by, the appellant which took over and received, and yet holds, all the assets of the said Tri-State Company, together with certain personal and real property amounting in value to the sum of $150,000. That the plaintiff is informed and believes that the Southwestern Company expressly assumed all contracts and obligations of the Tri-State Company, by the terms of said transaction.

That after the purchase of the said stock of the Tri-State Company by appellant, and prior to the taking over of the property of the Tri-State Company, the defendants put it out of their power to fulfill said contract with the plaintiff by selling and conveying to the Cumberland Telephone & Telegraph Company their Tennessee property, and the joint line constructed in pursuance of said contract. That the defendant and the Cumberland Company severed said line immediately after said purchase, and left the plaintiff's part thereof wholly useless and without connection to the points to which it was built. That the defendants have repudiated said contract, and wholly refuse to perform same, or any part thereof. That the Southwestern Company and the Cumberland Company are part of the telephone system extending to all parts of the United States known as the Bell system. That they are not in competition. That the plaintiff company was not part of the Bell system, but is

an independent telephone company, and a competitor of the said Southwestern and Cumberland Companies.

That the plaintiff has been greatly damaged by reason of said breach of contract, and that said joint line was constructed by each of the contracting parties with the sole view to profits, which would be made by them by joining thereto and such profits were contemplated by the parties, when the contract was made, and the loss which both parties had in mind is the loss which would arise by reason of the breach thereof. That the business which would have been done over said line, if same had been used, would have been large. Such business theretofore handled by the Tri-State Company had been very large, and plaintiffs would have derived large profits from its proportion of the tolls as fixed in the said contract. Judgment for $250,000 was prayed. The complaint was framed in two aspects. Recitals were there contained which appellee alleged entitled it to follow the assets of the Tri-State Company into the hands of the appellant, and to the extent of these assets, to require satisfaction of its demand by appellant. In the second place, it is averred that appellant had wilfully induced and procured the Tri-State Company to commit a breach of the contract, and was therefore directly liable.

The answer denied all the material allegations of the complaint.

The appellee and the Tri-State Company respectively complied with the contract, for the construction of the new lines, and they were in position to operate under the contract, when the sale took place as alleged in the complaint. The contract, which was introduced in the evidence, provided in substance that each company would do its long-distance business exclusively over the lines of the other, to all points reached by it, upon an agreed division of tolls. The shares of the stock of the Tri-State Company were assigned to certain officers and employees of the appellant, but the money for the stock was paid to the Tri-State Company's stockholders by appellant. Upon the acquisition of the properties of the

Tri-State Company no attempt was made to comply with the contract herein sued on. But upon the contrary, the appellant immediately sold its lines in Tennessee to the Cumberland Company. The said R. C. Rose, was the general manager of the Tri-State Telephone Company, and owned a controlling interest in that corporation, and first negotiated for the sale of his individual stock; but appellant agreed with Rose to buy all the stock of the Tri-State Telephone Company, at the same price paid Rose, provided the stock was offered for sale within a certain specified time. Rose's stock was purchased on May 26, 1911, and thereafter all the remaining stock was also purchased.

The breach of the contract sued on is admitted, and appellant concedes its liability for some damages; but it says the amount should only be nominal damages, for reasons that will be set out hereafter. Upon the other hand, appellee says it should have damages, not only compensating its loss growing out of the breach of the contract, but punitive damages as well. The proof shows that the superintendent of appellant had knowledge of the existence of the contract between appellee and the Tri-State Company on June 12, 1911, but there was no proof of any knowledge of that fact on the part of appellee, prior to that time; but at that time appellant had already bought and paid for a controlling interest in the Tri-State Company. The Tri-State Company was reorganized, and at a meeting of its directors at Osceola on July 1, 1911, its superintendent was directed to sell that part of its property situated in the State of Tennessee, and on the next day it was sold to the Cumberland Company, and the operating control of the lines, which would have made it possible for the Tri-State Company to comply with its contract, passed into the hands of the Cumberland Company, which company at once cut loose the connection with the lines of the appellee.

On September 22, 1911, the officers and directors of the Tri-State Company, being officers and employees of the appellant, conveyed the entire remaining portion of

the Tri-State Company in Arkansas to the appellant for a cash consideration of $118,415.66. This money was not, in fact, paid to the Tri-State Company, but represented the money which appellant had already paid Rose and other stockholders of the Tri-State Company, and some small debts of that company which appellant had paid. The property of the Tri-State Company in Missouri had been sold by the appellant to the Missouri Bell Telephone Company. On October 5, 1911, the Tri-State Company, by proper resolution filed in the office of the Secretary of State of Arkansas, was dissolved. There was a decree in favor of appellee in the court below for $34,-500, and both parties have appealed. Other facts will be stated in the opinion.

*A. P. Wozencraft, D. A. Frank* and *Walter J. Terry,* for appellant.

1. The damages sought to be recovered are not such as naturally result from the breach of the contract, nor such as could have been contemplated as a probable consequence of a breach of the contract. 103 Ark. 584, 148 S. W. 271, and cases cited; 11 N. W. 829.

2. The evidence is convincing that there was and is no means of ascertaining reasonably any damages suffered by the complainant. The damages claimed are merely contingent and speculative.

In order to determine that there was loss of profits, there must be proof that there would have been a profit, and, in this case, not only so, but that there would be a profit continuously for the entire twenty-five years. 78 Ark. 336, 93 S. W. 987; 13 Cyc. 53, 54; 80 Ark. 232, 96 S. W. 988; 91 Ark. 433, 121 S. W. 920; 141 N. C. 284, 53 S. E. 885, 8 L. R. A. (N. S.) 255; 9 Wheat. (U. S.) 377, 6 Law Ed. 115; 5 Wheat. 116; 3 Wheat. 560; 124 Mass. 424, 26 Am. Rep. 673; 124 U. S. 454, 31 Law Ed. 483; 7 Cush. (Mass.) 516; 139 U. S. 199, 35 Law Ed. 150; 95 N. E. 964.

3. The only correct measure of appellee's damages would be the damage which actually resulted from the breach of the contract and which would compensate appellee for the injuries sustained, together with the ex-

pense or cost to which it may have been subjected as a consequence of the breach. 139 U. S. 199, 35 L. Ed. 147; 106 Pa. 237; 16 N. Y. 489, 69 Am. Dec. 718; 135 N. Y. 209, 31 N. E. 1018; 190 U. S. 545, 47 L. Ed. 1171.

4. The evidence does not support a finding of any damages to plaintiff because of loss of future profits. There is but one reasonable deduction to be drawn from the evidence, namely, that there is no proof of any profits whatever which appellee could reasonably have hoped to make under the contract. The cases hold that when a new business has been prevented from being operated, there is nothing definite by which to go, and a recovery of profits that might have been made will not be allowed. 56 Kan. 614, 54 Am. St. 598, 44 Pac. 621; 58 Ill. App. 519; 64 Ill. 417; 86 Ill. 215; 120 Ia. 584; 77 Md. 202; 46 Miss. 458; 69 Pa. 432; 9 Tex. Civ. App. 210, 28 S. W. 714; 65 Kan. 101, 68 Pac. 1091; 21 Wend. 342, 34 Am. Dec. 250; 1 Disney (Ohio) 23; 14 Neb. 369, 45 Am. Dec. 121, 15 N. W. 704; 63 C. C. A. 247; 19 L. R. A. (N. S.) 157; 81 S. C. 181; 26 L. R. A. (N. S.) 1193.

*Allen Hughes,* for appellee.

1. One who aids another to violate a contract with a stranger, whether for the purpose of injuring the latter, or for the purpose of obtaining some benefit for himself at the latter's expense, to his injury, is guilty of an actionable wrong, a tort, and is liable in damages. 86 Ark. 130-139, and authorities cited.

His liability is still clearer, if, instead of inducing the breach, he does some wrongful act which makes performance impossible. 9 Paige on Contracts, § 1330. The facts bring this case within both these rules. See, also, L. R. 6 Q. B. Div. 338; 121 Fed. 493; 111 U. S. 264; 93 U. S. 266-268.

2. The expenses incurred by appellee in preparing to perform the contract constitute a loss already suffered by the breach, and damages are recoverable therefor. 110 U. S. 338. As to future profits, it is an established rule in this State that such profits constitute an element

of recoverable damages upon breach of such a contract as is involved here. 78 Ark. 336; 69 Ark. 219; 80 Ark. 228-332; 91 Ark. 427; 95 Ark. 363; 97 Ark. 522; 103 Ark. 584.

3. In actions of tort where the injury is wilful, exemplary damages may be allowed. If appellant, through its general officers, knew that their conduct in the premises was about to inflict injury upon the appellee, and continued in this course with a conscious indifference to consequences, the act was wilful and malicious, and exemplary damages are recoverable. 42 Ark. 321; 84 Ark. 241; 104 Ark. 89; 89 Ark. 261; 90 Ark. 468; 11 L. R. A. (N. S.) 201.

SMITH, J., (after stating the facts). We think there is no foundation for the claim for punitive damages. It is true appellant deliberately broke the contract sued on, after knowledge of its existence, but it is also true that it had purchased and paid for the controlling interest of the stock of the Tri-State Company before its officers knew of the existence of the contract. Rose, who appears to have been a very shrewd trader, admitted he told appellant nothing of this contract, until after the sale of his own stock had been consummated.

The serious question in the case is what damages are recoverable? Appellant admits its liability for nominal damages, but says only nominal damages should be recovered.

The record on that question is a very voluminous one, and a great mass of statistics, and many calculations are offered in evidence, in support of the respective theories of the parties. This evidence has been carefully considered by us, but it will not be set out in detail, because this opinion would be protracted to an indefinite length, if we set out these calculations in a manner to present with any satisfaction the respective theories of the parties. Under appellee's view, the contract would have been enormously profitable to it, while the appellant undertook to show that so far from being a source of profits that, on the contrary, the performance of the

contract would have entailed considerable loss on appellee. This evidence was offered for the purpose of showing that no profits would have been earned, and for the additional purpose of showing the prospects of earning profits was too uncertain, speculative and conjectural to form a basis of recovery. We state a summary of appellant's contentions rather than their details. It says no business had ever been done under the contract, and that there was no criterion for the proof of damages by reason of loss of profits, and that the loss of profits on account of the breach of the contract sued on could not have been, and was not, contemplated by the parties thereto, when it was made. That the business of the contracting parties had to be procured from the public, and that appellee was already in competition in Memphis with a company much older, stronger and better established than it was, and with many more connections, and with a more efficient service than appellee had, and that no one could say over which of the Memphis lines business would originate; that the business might grow, or might diminish, and that appellee might not continue in business, inasmuch as the proof showed that it had never paid any dividends; that in addition, the business contemplated was interstate business and subject to national regulation, which might so reduce the rates that possible profits might be cut down, and that Government ownership of all telephone and telegraph lines was being advocated, and was not an improbability; that new methods were being introduced, and that the wireless telephone was a possibility, and if it is ever an accomplished fact, it would render the telephone lines valueless; that there were expenses of operation, and maintenance, and replacement, resulting from storms, floods and freezes, which would be very expensive, and that equipments become obsolete and worthless. Appellant introduced its records and books showing the actual business, which it had done, since the acquisition of the Tri-State Company, which might have been done under the terms of the contract sued upon, and it undertook to show from these

figures that in any event the chancellor's assessment of damages was excessive. Moreover, appellant shows that it was contemplating an entry into the territory covered by the Tri-State Company, at the time it began negotiations for the purchase of the property, and that it had already decided to occupy that field with competing lines in the event it failed to purchase the property of the Tri-State Company. The proof, however, showed that it would have required from two and one-half to three years to have completed its lines through the Tri-State Company's territory.

Upon the other hand, appellee offered proof to the effect that it had an established business, and that it would have continued in business, that the Tri-State Company had an established business in a territory in which it had no competition. It appears from the evidence, with reasonable certainty, that the Tri-State Telephone Company had an established business which was constantly increasing with every prospect of an additional increase, rather than any diminution. It is shown that the Tri-State Company had invested only about $20,-000, and that after payment of dividends it had invested its profits in extensions of its lines, and other improvements to its property, until at the time of the sale its property was worth, and sold for more than seven times the original investment.

The right to recover the loss of profits as damages upon the breach of a contract has been several times before this court and has been fully considered in the various opinions which discuss that subject. The rule announced in 13 Cyc. 51-54, reads as follows:

"As a general rule, a party is entitled to recover the profits that would have resulted from a breach of a contract into which he had entered, where such breach is the result of the fault or omission of the other party. In such case, however, it must be clearly shown that the profits of which he claims to have been deprived are capable of being definitely ascertained, although it is not necessary that the profits claimed should be "certain"

or "probable;" it is sufficient if they are reasonably "certain," or "reasonably probable." Where there are no rules of evidence, or no fixed mode of calculation, applicable to the particular state of facts involved, it has been the rule to deny them. The broad general rule in such cases is that the party injured is entitled to recover all his damages, including gains prevented as well as losses sustained, and this rule is subject to but two conditions; the damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, must be such as might naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to the cause from which they proceed. It is against the policy of the law to allow profits as damages where such profits are remotely connected with the breach of contract alleged, or where they are speculative, resting only upon conjectural evidence, or the individual opinion of parties or witnesses." This statement of the law has been frequently quoted with approval in the decisions of this court.

Other cases which announce the conditions that must exist before a recovery of profits can be had as damages are as follows: *Border Co.* v. *Adams,* 69 Ark. 219; *Spencer Co.* v. *Hall,* 78 Ark. 336; *Beckman Co.* v. *Kittrell,* 80 Ark. 228; *Hurley* v. *Oliver,* 91 Ark. 427; *Singer Co.* v. *Reeves,* 95 Ark. 363; *Ford Hardwood Lbr. Co.* v. *Clement,* 97 Ark. 522; *Harmon* v. *Frye,* 103 Ark. 584.

Appellant says no business was done under this contract, and cites us to cases which announce the rule, recognized in our own decisions, that damages can not be recovered where the business interfered with was not established, and consequently no showing made as to the profits which were being earned. But this rule is not applicable here, for each of the contracting parties had an established business, and, while they depended upon the public for their patronage, the proof shows that the extent of this patronage was not capricious, or speculative, but was reasonably certain.

The chancellor found that the appellee had con-
structed a telephone line at a cost to it of $10,000 in order
that it might be in position to comply with its part of the
contract, in furnishing telephone connection into the city
of Memphis; and he further found that although the line
could not be used for that purpose, it still had a value
which he fixed at the sum of $3,000; and he therefore as-
sessed against appellant damages on account of the con-
struction of this line in the sum of $7,000. The court be-
low also found that appellee would have made on an aver-
age the sum of $1,100 during each of the twenty-five years
for which the contract sued upon would have run, and
rendered judgment for that amount. We think the evi-
dence supports his finding on the loss arising out of the
line which appellee had constructed; and we also think
his finding is not against the preponderance of the evi-
dence that appellee would have earned a net profit of
$1,100 per year had the terms of the contract been com-
plied with. But we can not say that the evidence is suffi-
cient to sustain this finding during the entire period cov-
ered by the contract. It is somewhat difficult to say just
when these profits would cease to be a reasonable cer-
tainty and become speculative. It may be true that the
profits would not only have continued to be as much as
$1,100 per year, but would have increased. A study of
the evidence in this case leads to the conclusion that there
is a point of time when the result of this contract ceases
to be a reasonable certainty, and becomes conjectural;
and when that point is reached, there can be no further
recovery of damages, notwithstanding what one's opin-
ion may be about the probabilities. When the various
circumstances in proof are considered, we conclude that
a recovery should not be permitted, beyond a period of
three years from the date of the completion of the lines
contracted to be constructed to make the contract effec-
tive. And this is not an arbitrary period which we have
fixed upon. A circumstance to which we give much
weight, but which does not entirely control our conclu-
sion, is that the proof shows, with reasonable certainty,

that appellant was about to enter the territory of the Tri-State Company, and would have done so, as soon as the lines could have been constructed, and that this would have taken approximately three years. The proof shows that the Cumberland Company had about three times more subscribers in the city of Memphis, and in the territory which could have been served by appellee company under the terms of the contract, than appellee had, and the proof shows further that the value of telephone service depends largely upon the number of connections given to subscribers. No one may know how the business in the Tri-State Company's territory would have been divided between the Memphis companies after the entry of the appellant into the territory of the Tri-State Company, nor whether the contract sued upon would have been profitable after that time; but this competition would not have been had before the three years required to build the new line, and upon a consideration of all the facts and circumstances in the proof, we have concluded that these profits should be allowed for three years, but not beyond that period.

The decree of the court below will therefore be modified to exclude any allowance of profits, for the last twenty-two years covered by the contract; and, as so modified, it is affirmed.