28

FARMERS COOPERATIVE ASSN. *v.* PHILLIPS

5-3933                                                405 S. W. 2d 939

Opinion delivered September 12, 1966

*Bob Scott* and *H. Franklin Waters,* for appellant.

*Little & Enfield,* for appellee.

HUGH M. BLAND, Justice. This is a suit for damages for breach of an alleged contract. The parties will be referred to as "Cooperative," defendant below, and "Grower," plaintiff below. The contract was attached to and made a part of the complaint as though written therein, word for word.

The contract was dated the 25th day of February, 1964, to continue until December 31st, 1964, a period of about 10 months. The pertinent parts of the contract are as follows:

Grower agrees to produce broilers during this peri-

od, and agrees to abide by this contract, but he understands it can be changed or cancelled by the Cooperative if the Grower does not carry out recommendations made regarding proper management of flock, or if changes in poultry industry warrant a change in type of contract.
* * *

It is expressly agreed and understood that this agreement does not create nor attempt to create a partnership, either general or limited, between the parties hereto, but is evidence of an independent contract, and an employer-employee relationship does not exist by reason of this agreement and neither party shall have authority to bind nor act on behalf of the other except as herein specifically provided.

The Grower agrees to furnish brooder house and brooder equipment, and to produce broilers for the Cooperative of the kind, weight, and quality necessary for market.

Grower agrees to produce broilers on a guarantee of one and one-half cents per pound on net weight for broilers sold.

The Cooperative demurred to the complaint which was overruled and answer was duly filed, reserving objections to the overruling of the demurrer.

The case came on for trial before a jury on November 17th, 1965. The testimony was that Grower had been a broiler producer for approximately 16 years. On a 12-month contract, Grower would normally plan to produce 4 bunches of broilers. After the contract was signed, Cooperative placed 3 bunches of broilers with Grower; one bunch on February 26th, 1964, which were in the houses until the 8th day of May, 1964. Another bunch was placed in the houses of Grower on May 5th, 1964 and marketed and sold on July 20th, 1964. The last bunch was placed in the houses on July 30th, 1964, and sold on October 2nd, 1964.

On September 26th, 1964, Cooperative wrote Grower as follows:

"Dear Sir: We regret that we are not putting any chickens in now. The way we see it, it will be the first of the year or more. We recommend that if you want to get chickens somewhere else it will be O. K. We want to thank you for your patronage and if we can be of any service, please feel free to call on us. Sincerely, Jack W. Deason."

The testimony was undisputed that it was almost impossible to obtain chickens in the fall of 1964. Grower admitted that he tried in two places to obtain them but was unable to do so and did not obtain any chickens until mid-December, 1964. The only evidence as to damages was that Grower received $1,866.00 for the last bunch of broilers sold. According to the record, this was the gross amount and there was no testimony as to net profit.

At the conclusion of all of the testimony, the Cooperative moved for a directed verdict as follows:

"Comes now the defendant and moves the Court to direct a verdict for the defendant for the following reasons: One, that the plaintiff's case rests upon a contract which has been placed in evidence which says it can be changed or cancelled if the conditions in the poultry industry warrant a change. There is testimony that chickens became scarce in September. For the further reason, it does not specify the number of broilers to be grown and the witness testified that he grew broilers and was paid for it so there has been no breach of contract shown. For the further reason, that even assuming there were a breach, there has been no basis or foundation or evidence placed in the record which would sustain award of damages for any amount whatsoever."

This motion was denied and the court, together with

other instructions, gave Instruction No 7 as follows:

> "You are further told that the contract is an instrument which is binding on both parties and is governed by its terms. If it is breached without grounds, then the party breaching the contract is liable in damages to the other. In this case, you are told that the measure of damages would be governed by the terms of the contract at the rate of one and a half cents per pound on any broilers that were denied, if you find that they were denied, to the grower by the defendant. In that connection, you cannot guess or speculate for it must be based on evidence to support it."

Cooperative objected to this instruction on the grounds that the court had interpreted the contract and commented on the evidence.

After instructing the jury, the court submitted to them two interrogatories. Interrogatory No. 1:

> "Do you find by a preponderance of the evidence that defendant breached the written contract with the plaintiff and that said breach damaged the plaintiff?"

Interrogatory No. 2:

> "What do you find by a preponderance of the evidence the damages of the plaintiff to be as a result of a breach of the contract by defendant. $................"

The first was answered "yes" and the second by writing in "$777.50" as damages.

We hold the court was correct in overruling Cooperative's demurrer to the complaint. The law is well settled in Arkansas that in determining the sufficiency of the complaint on demurrer, the allegations contained in the pleadings must be taken as true. *Moore v. North College Avenue Improvement Dist. No. 1 of Fayetteville,* 161 Ark. 323, 256 S. W. 70. A demurrer should be over-

ruled when facts stated in the complaint, with every reasonable inference deducible therefrom, constitute a cause of action. *U. S. Fidelity & Guaranty Co.* v. *Moore,* 233 Ark. 703, 346 S. W. 2d 524 (1961).

Instruction No. 7 given by the court is clearly erroneous. The court states, "you are told that the measure of damages would be governed by the terms of the contract at the rate of one and a half cents per pound on any broilers that were denied * * * ." The only testimony as to damages was by Grower who testified that he received $1,866.00 for the broilers sold the latter part of August 1964.

We are committed to the rule in *Black* v. *Hogsett,* 145 Ark. 178, 224 S. W. 439 (1920) and subsequent cases, to the effect that where one party to a contract is prevented from performing by the fault of the other party, he is entitled to recover the profits which the evidence makes it reasonably certain he would have made had the other party carried out his contract. As a precedent for this rule the court cites *Streudle* v. *Leroy,* 122 Ark. 189, 182 S. W. 898 (1916) and *Harmon* v. *Frye,* 103 Ark. 584, 148 S. W. 269 (1912).

In *Sumlin* v. *Woodson,* 211 Ark. 214, 199 S. W. 2d 936 (1947) the holdings in *Black* v. *Hogsett* and *Harmon* v. *Frye, supra,* were cited with approval. In this case it was held:

"When a party embarks on the enterprise of recovering anticipated profits, he must present a reasonably complete set of figures, and not leave the jury to speculate as to whether there would have been any profits."

Grower failed to fulfill his burden in this regard and the verdict for $777.50 is based upon conjecture and speculation and cannot be allowed to stand.

The evidence is likewise uncertain as to breach of

contract. The case was not fully developed. It is, therefore, evident that this case must be reversed. Cooperative requests that we reverse and dismiss. A similar situation was before the court in *Hayes Brothers Flooring Co.* v. *Carter, Admnx.,* 240 Ark. 522, 401 S. W. 2d 6 (1966) and this court held that although the judgment was reversed for insufficiency of the evidence, where it appeared that the evidence might be more completely developed, circumstances were held to justify remanding the case for a new trial. We believe this should be done in the case at bar.

The judgment is reversed and the cause remanded for a new trial.