CROW *v.* RUSSELL.

5-893
289 S. W. 2d 195

Opinion delivered March 26, 1956.

[Rehearing denied April 30, 1956.]

*George M. Booth* and *Coleman & Mayes,* for appellant.

No brief for appellee.

MINOR W. MILLWEE, Associate Justice. Appellant, S. L. Crow, brought an action of unlawful detainer against appellees, Josiah E. Russell and wife, in which he sought possession of a certain dining room and damages for its alleged unlawful detention in the sum of $1,550.00. A writ of possession was issued upon the posting of the statutory bond by appellant but appellees filed a cross-complaint in which they sought judgment for loss of prospective profits allegedly suffered by them in the sum of $1,130.00 because of appellant's breach of an oral lease contract under which appellees operated the dining room for three months as tenants of the appellant.

At the conclusion of all the evidence the trial court found, as a matter of law, that appellees' eviction was wrongful because no notice to terminate the tenancy had been given them and a verdict was directed in their favor upon appellant's complaint. Appellant concedes the correctness of this ruling but contends the court erred in overruling his motion for a directed verdict upon

appellees' cross-complaint because the evidence is insufficient to sustain the verdict in favor of appellees in the sum of $200.00 for loss of prospective profits sustained by reason of appellant's breach of the contract.

There is little dispute in the evidence which discloses that appellant had the Randolph Hotel in Pocahontas, Arkansas, under lease from the owner in December, 1954, when it was orally agreed that appellees would take over operation of the dining room until August 1, 1955, when appellant's lease expired and there would be further negotiations as to a written lease. The appellant was inexperienced in the hotel business and had been operating the dining room at a loss. Mrs. Russell was an experienced operator of eating establishments. It was also agreed that for the term of January 1 to August 1, 1955, appellees would furnish meals to appellant and one hotel employee and pay one half of the hotel utility bills and for $87.00 worth of groceries on hand, when profits permitted, as consideration for the oral lease of the dining room and equipment.

Appellees took over the dining room January 1, 1955 and operated it until shortly after the filing of the instant action on March 26, 1955. According to appellees' records, the receipts of the business for the months of January, February and March, respectively, were in the amounts of $404.02, $410.66 and $551.44. The total business disbursements for the same respective months were $409.35, $384.86 and $409.15, resulting in a net loss of $5.33 for January and net gains of $25.80 and $142.29, respectively, for February and March. In addition appellees and their two children received all their meals which were valued at approximately $135.00 per month.

A banquet hall was added to the premises in January and appellees acquired the business of serving luncheons to two civic clubs and had made arrangements to serve another club at an estimated additional profit of $10.00 weekly at the time of eviction. When appellees first took over the project very few guests of the hotel were taking their meals there but nearly all of

them were doing so when this suit was filed. Mrs. Russell estimated they would have realized a cash profit of $175.00 monthly besides the meals for her family for the four months unexpired term of the oral lease if it had not been breached by appellant. She advised appellant in February that they would begin paying on the utility bills in March. Appellant asked her to pay $35.00 as appellees' part of the utility bills to date shortly after March 1st. At that time appellant owed appellees $68.30 for meals furnished two of his guests and Mrs. Russell told him to bring the utility bills and they would have a settlement, but he refused to do so.

The rule applicable in cases like this was clearly stated by Judge Hart, speaking for the court, in *Black v. Hogsett,* 145 Ark. 178, 224 S. W. 439, as follows: "The principle touching the question of profits as an element of damages is well settled. The rule is that where one party to a contract is prevented from performing the same by the fault of the other party, he is entitled to recover the profits which the evidence makes it reasonably certain he would have made, had the other party carried out his contract. The rule that damages which are uncertain or contingent can not be recovered, does not apply to uncertainty as to the value of the benefits to be derived from performance, but to uncertainty as to whether any benefit would be derived at all. If it is reasonably certain that profits would have resulted had the contract been carried out, then the complaining party is entitled to recover. *Straudle v. LeRoy,* 122 Ark. 189, and *Harmon v. Frye,* 103 Ark. 584." Other cases to the same effect are: *Spencer Medicine Co. v. Hall,* 78 Ark. 336, 93 S. W. 985; *Beekman Lumber Co. v. Kittrell,* 80 Ark. 228, 96 S. W. 988; *Blumenthal v. Bridges,* 91 Ark. 212, 120 S. W. 974; *Harrell v. Davis,* 210 Ark. 939, 198 S. W. 2d 180.

In arguing that the evidence of prospective profits was too speculative and conjectural, appellant relies on such cases as *Beasley v. Boren,* 210 Ark. 608, 197 S. W. 2d 287, and *Sumlin v. Woodson,* 211 Ark. 214, 199 S. W. 2d 936. In the *Beasley* case Judge ROBINS pointed out

that no records or data were introduced in support of plaintiffs' theory of loss of anticipated profits at a new and untried business location. Similar conditions existed in the *Sumlin* case where plaintiff was relying primarily upon the experience of a prior operator in the absence of any showing that plaintiff's ability as a merchandiser approached that of his predecessor.

When considered in the light most favorable to appellees, we conclude that the evidence was sufficient to sustain the verdict of $200.00 for loss of prospective profits. In our opinion the evidence meets the test of reasonable certainty and is not too speculative or conjectural to be considered as the proximate result of appellant's breach of the oral lease contract.

Affirmed.