OZARK KENWORTH, INC. and
PACCAR FINANCIAL CORP. and
Darrell MEREDITH d/b/a DARRELL
MEREDITH TRUCKING *v.* Johnny D. NEIDECKER

84-15                                          672 S.W.2d 899

Supreme Court of Arkansas
Opinion delivered July 16, 1984

*Cypert & Roy,* for appellants.

*Bethell, Callaway, Robertson & Beasley,* by: *John R. Beasley,* for appellee.

STEELE HAYS, Justice. This suit comes to us on appeal by Ozark Kenworth, Inc., appellant, from a suit brought by Johnny Neidecker, appellee, who was awarded damages by a jury for breach of warranty and fraud in connection with the sale of a truck to Neidecker.

In March 1980, Neidecker purchased from Kenworth a Peterbilt truck represented as a 1978 model. The truck was sold "as is" with all other warranties excluded. In May, Neidecker was stopped by the Illinois State Police for being overweight. A check on the vehicle showed it had either a 1975 or 1976 Caterpillar engine, a 1971 frame and a 1978 Peterbilt cab. Neidecker then went back to Kenworth to seek redress but was told by Kenworth there was nothing they

could do. Neidecker had by this time paid $10,500 to Kenworth but stopped all further payments and evidently made payments instead to an escrow account at a bank. Neidecker continued to use the truck for six months, incurring repair bills totaling $13,888. In October, 1980 Kenworth repossessed the truck as a secured party under § 85-9-503 of the Uniform Commercial Code. The truck was in a repair shop and had been burned from unknown causes. Kenworth took possession of the truck and sold it for salvage.

Kenworth first argues that the court erred by not granting a directed verdict on the issue of Neidecker's revocation of acceptance. Kenworth submits Neidecker merely tried to renegotiate the contract, and his subsequent use of the vehicle for six months waived any revocation that might have been made. However, the evidence was such that the jury could have found revocation under the circumstances. A directed verdict is proper only when there is no substantial evidence from which the jurors, as reasonable persons, could find the issues for the party opposing the motion. *Sharp Co. v. N.E. Ark. Planning and Consulting Co.,* 275 Ark. 172, 628 S.W.2d 559 (1982).

Neidecker testified as follows concerning his attempt to revoke the contract:

NEIDECKER: Yes, sir, and I asked him if he would make up the difference, make it up, because I would not pay him, I couldn't because it was not a 1978 Peterbilt. Would he make up the difference on it, something, you know, for me to revoke that agreement. We had to make out another one, and it wasn't his problem he said, so, at that time I left.

Q: Did you indicate anything about the contract?

NEIDECKER: Yes, sir, I sure did. I asked him, you know, to make a different contract and everything; there wasn't nothing he could do about it . . .

Kenworth's manager, Rick Scott, testified as follows:

Q: When Mr. Neidecker came in to complain, after he had been stopped by the state police in Illinois, did you tell him there's — you got what you paid for and there's nothing I can or will do about it?

SCOTT: I told him there was nothing I could do for him, correct.

Q: And if he had made any statement past that point, it would have been to no avail, because that was your position that you couldn't do anything for him?

SCOTT: That's correct.

After his meeting with Scott, Neidecker stopped making any payments to Kenworth.

Neidecker was twenty-one years old. He had just gone into business for himself with the purchase of this truck. Comment 5 to § 85-2-608 states: "The content of the notice [of revocation] under subsection (2) is to be determined in this case as in others by considerations of good faith, prevention of surprise, and reasonable adjustment . . . Following the general policy of the Article, the requirements of the content of notification are less stringent in the case of a non-merchant buyer."[1] We think there was sufficient evidence presented from which the jury could have found revocation.

As to the use of goods after revocation, that circumstance does not necessarily constitute a waiver of revocation, but the courts are divided on this issue. Anderson, Uniform Commercial Code (1983) discusses the point and after noting that some courts have found such use as cancelling a revocation, notes in part:

Other courts hold that the post-revocation use does not affect the revocation of acceptance where the continued use was reasonable as when it was explained

---

[1] We also note that Comment 1 to § 85-2-608 points out that the Code no longer speaks or operates in terms of rescission and the remedy is now dealt with as revocation of acceptance.

on the ground of mitigating damages, inability to effect cover, the buyer's waiting for instruction from or removal of goods by the seller, economic necessity or as a reasonable way of protecting the goods in which the buyer had a security interest for the recovery of the purchase price.

Anderson, *Id.* § 2-608:46

The continued use of the goods does not cancel a prior rejection where the seller had wrongfully refused to accept the buyer's rightful rejection of a mobile home and the seller knew that all the money of the buyer was invested in the home. "While the use of the home [by the buyer] was wrongful as against the seller, such use was the direct result of the oppressive conduct of the sellers in not allowing the buyers to reject, and we do not believe that it is necessary to conclude that use of the goods cancelled the rejection." [*Jones* v. *Abriani*, 350 N.E.2d 635 (1976)]

Anderson, *id.* § 2-606:33.

This court has not yet addressed the issue, but we believe the better view is represented by those cases[2] which held such use will not invariably cancel revocation[3]. The issue is determined on a case by case basis, with the reasonableness of post-revocation use being the underlying consideration, taken in conjunction with a consideration of all the other elements necessary to effect a justifiable revocation. In this case, the jury had before it the fact that Kenworth flatly refused to acknowledge any breach or to accept any revocation and the jury could have found Neidecker's use under the circumstances was reasonable. It would not,

---

[2]See cases cited in Anderson, *id.* § 2-608:46.

[3]In *Snow* v. *C.I.T. Corp. of the South*, 278 Ark. 554, 647 S.W.2d 465 (1983) we went as far as recognizing that under the Code, holding the goods and not tendering them back to the seller will not cancel a previous revocation and cited Anderson, *id.* § 2-618:18: "If the buyer has paid for the goods in advance or has incurred any expense or damages for which the seller is liable, the buyer, upon making a rightful revocation of acceptance is entitled to hold the goods until he has been paid. That is, the code in such a case gives the buyer a security interest in the goods. *Snow* at 278.

therefore, have been proper to direct a verdict on behalf of Kenworth.

Further, Kenworth maintains the court improperly instructed the jury on the issue of revocation of acceptance. The instructions were a recitation of § 85-2-602 with the omission of 2(a) from that section. With the omitted portion in italics, § 85-2-602 reads in its entirety:

85-2-602. Manner and effect of rightful rejection. — (1) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.

(2) Subject to the provisions of the two (2) following sections on rejected goods,

(a) *after rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller;* and

(b) if the buyer has before rejection taken physical possession of goods in which he does not have a security interest under the provisions of this Article [subsection (3) of Section 2-711], he is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them; but

(c) the buyer has no further obligations with regard to goods rightfully rejected.

(3) The seller's rights with respect to goods wrongfully rejected are governed by the provisions of this Article on seller's remedies in general.

Kenworth contends the issue of use and dominion of the goods was a fact question for the jury, that the instructions led the jury to believe that there was no further duty after revocation, nor that Neidecker was under any obligation to discontinue use or exercise of control or ownership. The instructions, however, did tell the jury under § 2-602(b) that

the appellee was "under a duty after rejection to hold them with reasonable care . . ." and did not, as Kenworth argues, imply that Neidecker had no further duty after revocation.

This issue, too, is new. In light of our discussion of the previous argument, we conclude that it was error for the question of Neidecker's use of the truck after revocation not to have been submitted to the jury as to its reasonableness. Nor was the instruction offered by Kenworth correct, which makes the objection insufficient to justify reversal. *Dickerson Construction Co. v. Dozier*, 266 Ark. 345, 584 S.W.2d 36 (1979).

Kenworth claims error in the trial court's failure to dismiss Neidecker's claim under the Federal odometer statute. Neidecker's original complaint was filed in October, 1980 and on March 3, 1983, appellee amended his complaint to include a claim under the Federal odometer law. The statute has a two year limitation, which had run, but under ARCP Rule 15(c), relation back is allowed if the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading, which is true in this case. Rule 15(a) allows an amendment at any time if the court determines that no prejudice or undue delay would result if allowed. Kenworth contends it was prejudiced by allowing the amendment as appellant filed its third party complaint on February 24, 1983, against Darrell Meredith (from whom Kenworth had purchased the truck) and a suit by Kenworth over against Meredith was precluded because of Neidecker's delay. It is settled that Rule 15(c) is to be liberally construed in allowing amendments, but the liberal construction applicable to Rule 15 is limited when prejudice to the adverse party is affirmatively shown. The doctrine of relation back should not be allowed when it operates to cut off a substantial right or defense to new matter introduced by the amendment although connected with the original cause of action. 61A Am. Jur. 2d §§ 310, 311, 314, 337. In this case Kenworth was prejudiced by allowing the amendment, as a defense and a substantial right was denied by its not being able to bring a suit over against the third party defendant.

Kenworth's other arguments are related and we address

them together. It argues error by the court in improperly admitting evidence of incidental and consequential damages, denying a directed verdict and a motion for JNOV on those damages, submitting the issues of damages to the jury, and denying a directed verdict on the issue of liability for breach of warranty of description and fraud. The jury award was $10,500 for breach of express warranty and $13,888 for fraud and misrepresentation.

The truck was sold "as is" all warranties excluded, and the only warranty available to the appellee was a breach of warranty of description i.e. the truck was sold "as is," a 1978 model while it was, "as is," a 1976 model. Kenworth contends the only evidence presented was repair bills incurred during the six months following revocation and no causal connection was shown between either the breach of warranty or the misrepresentation — that the appellee put on no evidence to establish that these bills would not have been incurred had the truck been a 1978 model and not a 1976 model.

The measure of damages for breach of warranty and for misrepresentation is the difference between the value of goods received and the value as warranted. See § 85-2-714 and § 85-2-721. Consequential and incidental damages may be recoverable in appropriate circumstances. Here, there was no evidence presented to prove damages for breach of warranty, nor did the instructions given on breach of warranty and fraud state what that measure of damages was. The only instruction given on the measure of damages was for incidental and consequential damages under § 85-2-715. Kenworth is correct that consequential damages must be proximately caused by the seller's breach or misrepresentation as the jury was so instructed. See § 85-2-715 (2), Consequential Damages. No such proof was offered, which left the issue to speculation. Neidecker contends, however, that these repairs would not have been necessary if Kenworth had made any attempt to cure its breach, but as we have said, Neidecker presented no proof that such would be the case. Neidecker urges that these repair bills are recoverable because they were made in connection with maintaining the truck after he revoked his acceptance. This claim falls under

§ 2-715 (1), Incidental Damages, but appellee cites no authority for such damages and we have found none that goes so far as to allow recovery for incidental damages or consequential damages on comparable facts, nor does the expectation of recovery for such repairs seem reasonable in these circumstances.

As to the denial of a directed verdict on breach of warranty and fraud we find there was sufficient evidence presented to go to the jury on liability on both of these issues. However, an essential element for both claims requires proof of damages proximately caused by the breach or misrepresentation or proof of difference in value. As discussed above, proof was lacking on both counts. With no proof of causal connection between the breach of warranty or the misrepresentation and no proof of the difference in value between the truck received and the truck as warranted, we must agree with Kenworth that the proof was insufficient on the issue of incidental and consequential damages, and on the issue of liability for breach of warranty and fraud.

A problem remains, however, on the issue of revocation, the result of a purely mechanical error, but one which prevented all of Neidecker's damages from being properly presented to the jury. The jury was instructed on what was required to revoke acceptance and that if such revocation were found the buyer could recover so much of the purchase price as had been paid. However, there was no verdict form supplied on which the jury could record such a finding and make an award for recovery of money paid. The $10,500 awarded for breach of warranty suggests that the jury did find revocation as that was the exact amount Neidecker prayed for in his complaint that had been paid to Kenworth. But we can neither make that assumption nor can we correctly hold, as was discussed above, that *any* award was proper under the breach of warranty claim for want of proof. We therefore remand the case for a determination on the issue of revocation and what damages are recoverable if justifiable revocation is found.

Reversed and remanded.

DUDLEY, J., not participating.