## JIM HALSEY CO., INC. *v.* Chet BONAR

84-180                                    683 S.W.2d 898

Supreme Court of Arkansas
Opinion delivered February 4, 1985
[Supplemental Opinion on denial of Rehearing April 15, 1985.*]

*PURTLE, DUDLEY, and NEWBERN, JJ., would grant rehearing.

464

*Martin, Vater & Karr,* by: *Charles Karr,* for appellant.

*Jack Skinner,* for appellee.

JACK HOLT, JR., Chief Justice. This case arose when Rick Nelson did not appear for a muscular dystrophy benefit concert in Fort Smith. The concert promoter, Chet Bonar, filed suit against Nelson's booking agent, Jim Halsey Co., Inc., for breach of contract, fraud, and negligence. This appeal from the jury's verdict in favor of the promoter is before us under Sup. Ct. R. 29(1) (c) and (o) as it presents questions about an act of the general assembly and in the law of torts. We affirm.

The facts are summarized as follows: A muscular dystrophy association festival was planned in Fort Smith by the appellee, Bonar, and others, which was to include an arts and crafts fair, other activities at Kay Rodgers Park, and a concert by a named performer. Bonar was to receive 25% of the gross from ticket sales, gate fees, and arts and crafts table rentals. Bonar contacted the appellant, Halsey Inc., to hire a performer for the concert. Rick Nelson was selected for a $6,500.00 fee. The fee was increased twice with Bonar's approval until it was set at $8,500.00. In each instance a contract was prepared by Halsey, Inc., and sent to Bonar for his signature. Bonar returned the signed contract to Halsey Inc., and it was forwarded to Nelson for his signature. It was never signed by Nelson or by his personal manager, Greg McDonald.

Bonar made a $3,750.00 deposit to Halsey Inc. on July

27, 1979, and began promoting the concert based on the appellant's assurances that Nelson would appear. The concert was scheduled for August 18, 1979. The final contract was sent to Bonar for his signature on August 2, which Bonar again signed and returned to Halsey Inc., who again forwarded it to Nelson. He still did not sign the contract. Two days before the concert, McDonald notified Halsey Inc. who in turn notified Bonar that Nelson would not perform at the concert. Halsey Inc. offered Hank Williams, Jr., in his place, and Williams played the concert for a fee of $6,500.00.

Bonar filed suit for breach of contract, fraud, and negligence. The jury returned a verdict for Bonar for $100,000.00.

The appellant raises numerous points on this appeal. We will address them in the order in which they were discussed in the parties' briefs.

The first allegation is that the trial court erred when it submitted the case to the jury on any theory other than breach of contract. The appellee also alleged fraud and negligence in his complaint. The jury was instructed as to these two theories in addition to breach of contract.

The appellant is apparently arguing that the appellee cannot pursue his case under two theories — contract and tort. Halsey Inc. maintains therefore that breach of contract is the appropriate theory, since the facts do not support the allegations of fraud and negligence. This argument is without merit.

This court has held that when a defendant denies liability, a plaintiff may proceed under two consistent theories of recovery, *Elrod* v. *G&R Const. Co.,* 275 Ark. 151, 628 S.W.2d 17 (1982); *Brown* v. *Aquilino,* 271 Ark. 273, 608 S.W.2d 35 (1980); Ark. R. Civ. P. 18(a); Brill, *The Election of Remedies Doctrine in Arkansas,* 37 Ark. L. Rev. 385, 408 (1983). Contract and tort theories have been determined to be consistent when both seek the same relief and the evidence to support recovery on one theory partially supports it on another. *Brill, supra.*

Here, the remedies are concurrent and consistent in that they arise out of the same transaction, the same facts prove at least parts of the theories, and no inconsistent positions are taken.

The appellee's allegations of fraud and negligence are based on factual representations by the appellant that they would provide Nelson for the concert. The appellee states that Halsey Inc., knew these representations were untrue and that he, as a promoter, relied on the representations and was damaged as a result. He further maintains that Halsey Inc., had a duty to warn him of the likelihood that Nelson would not appear in sufficient time for him to seek a substitute performer and fully promote that performer. The appellee offered evidence in support of these allegations sufficient to instruct the jury on theories of fraud and negligence. There was no error.

The next issue raised is that the trial court erred in admitting testimony and exhibits of potential lost profits, past and future, and submitting them as damages to the jury because such lost profits were speculative and conjectural.

The jury was instructed that, if they ruled in favor of the appellee, they were to award him an amount of money to fairly compensate him for the following elements of damage:

FIRST: The value of any profits lost and the present value of any profits reasonably certain to be lost in the future.

SECOND: The present value of any loss of ability to earn in the future.

THIRD: The value of any expenses lost.

The appellant objected to this instruction on the basis that there was no substantial evidence making it reasonably certain that appellee would have made, or will make a profit. Halsey Inc., maintains the evidence was insufficient to remove the question of profits from the realm of speculation and conjecture. We disagree.

On appeal this court views the evidence in the light most favorable to the appellee and affirms if there is substantial evidence to support the jury's verdict. *American Fidelity Fire Ins. Co.* v. *Kennedy Bros. Const.*, 282 Ark. 545, 670 S.W.2d 798 (1984).

The appellee offered the following evidence as to lost profits. He maintained that he would have received a profit of $15,193.75 if Rick Nelson had appeared. The $15,193.75 figure was based on 85% capacity at the stadium, with half of the tickets sold to adults for $7.00 and half to children for $4.00. Half of the partial capacity seating was then multiplied by $4.00 and the other half by $7.00. These two gross revenues were then added. That total was multiplied by 25%, Bonar's contractual share of the ticket sale. The total equalled $15,193.75.

Bonar's evidence of loss of reputation was supported by his own testimony about the good reputation he previously enjoyed and the testimony of Fred Baker, Jr., another local promoter. Baker and other concert sponsors also testified that they would not hire Bonar again because of what happened with the Nelson concert.

Baker testified as to the amount of income the appellee will lose as a result of the damage to his reputation. The witness stated that a promoter can expect to put on at least one concert a year. He then figured a reasonable income from that concert based on a formula which included the number of seats at the local stadium, a typical ticket price, and reasonable ticket sales based on an average vacancy rate. He subtracted concert expenses and arrived at a new yearly income for the promoter of $31,880.00.

A second witness testified as to the present value calculation of that annual income over periods of three, five, and ten years.

This court has held that:

The rule that damages which are uncertain or contingent can not be recovered, does not apply to uncertainty

as to the value of the benefits to be derived from performance, but to uncertainty as to whether any benefit would be derived at all. If it is reasonably certain that profits would have resulted had the contract been carried out, then the complaining party is entitled to recover.

*Crow* v. *Russell,* 226 Ark. 121, 289 S.W.2d 195 (1956), (quoting *Black* v. *Hogsett,* 145 Ark. 178, 224 S.W. 439 (1920)).

The fact that a party can state the amount of damages he suffered only approximately is not a sufficient reason for disallowing damages if from the approximate estimates a satisfactory conclusion can be reached. *Williams* v. *Black Lumber Co.,* 275 Ark. 144, 628 S.W.2d 13 (1982). Here, the appellee offered sufficient proof that he would have realized a profit and an approximate estimate of what that profit would have been.

In proving anticipated profits, a party "must present a reasonably complete set of figures, and not leave the jury to speculate as to whether there could have been any profits." *American Fidelity Fire Ins. Co.* v. *Kennedy Bros. Const., supra* (quoting *Sumlin* v. *Woodson,* 211 Ark. 214, 199 S.W.2d 936 (1947)). Here again, the appellee offered proof of the amount of lost future profits, along with the formula used to compute the amount. It was therefore not error to submit lost profits to the jury as damages.

The appellant's third argument is that the trial court erred in not dismissing the appellee's negligence and fraud causes of action because they were barred by the statute of limitations.

The allegations of fraud and negligence were raised by the appellee in amendments to his original complaint. The trial court has broad discretion to permit amendments to pleadings and we sustain the exercise of that discretion unless it is manifestly abused. *Wingfield* v. *Page,* 278 Ark. 276, 644 S.W.2d 940 (1983); Ark. R. Civ. P. 15.

Rule 15 not only makes liberal provision for amendments to pleadings, it also states that any claim asserted in the amended pleading, which arises "out of the conduct, transaction or occurrence set forth in the original pleading, . . . relates back to the date of the original pleading." Rule 15(c).

Since the amendment relates back, there can be no statute of limitations objection to the amendment without proof of undue delay or prejudice. *See, Brill, supra; Ozark Kenworth, Inc.* v. *Neidecker,* 283 Ark. 196, 672 S.W.2d 899 (1984). No such proof was offered here.

The appellant next contends that the trial court erred in not dismissing appellee's cause of action based upon fraud because the complaint and amendments failed to state with particularity the circumstances of fraud.

Ark. R. Civ. P. 9(b) provides:

(b) Fraud, Mistake, Condition of the Mind. In all averments of fraud, mistake, duress, or undue influence, the circumstances constituting fraud, mistake, duress or undue influence shall be stated with particularity.

The appellee's amended complaint stated that the defendant (the appellant here) made factual reapresentations that they had an agreement with Rick Nelson and would provide him for the concert and that "[t]hese representations were untrue and known to be untrue by the Defendant." Bonar the alleged reliance on the factual representations and resulting damages. When the appellant objected at trial to the proof offered as to fraud, the judge ruled that the allegation of misrepresentation in the original complaint was stated "with enough particularity to give notice and . . . the subsequent amendments relate back."

This court has held that fraud must be specifically alleged and that, "[t]he facts and circumstances constituting the fraud should be set forth. There should be some concealment, *misrepresentation* (emphasis added), . . . by

which another is misled, to his detriment; and these . . . must be alleged and proved." (citations omitted). *Beam Bros. Contractors* v. *Monsanto Co.,* 259 Ark. 253, 532 S.W.2d 175 (1976). We found that a cause of action had been stated in *Beam* where the complaint alleged a representation and its falsity, which was material to the contract; reliance on the representation; the right to so rely; and resulting damages.

Here, proof was offered of a misrepresentation — that Nelson would appear — which was material to the contract; reliance on the representation since Bonar began promoting the concert; the right to so rely, based on Halsey Inc.'s representation that they had an agreement with Nelson; and resulting damages. The allegation of fraud was therefore stated with sufficient particularity.

The fifth issue raised is that it was error to permit cameras in the courtroom and adjacent areas over appellant's objection.

In *Petition of Ark. Bar Ass'n,* 271 Ark. 358, 609 S.W.2d 28 (1980), this court adopted Canon 3 of the Code of Judicial Conduct and decided to permit broadcasting and photographing of trial proceedings. *See also, Modification of Code of Judicial Conduct,* 275 Ark. 495, 628 S.W.2d 573 (1982) (removing the requirement of prior written consent from all parties and witnesses). The final version of the rule, in pertinent part, reads:

> (b) An objection timely made by a party or attorney shall preclude broadcasting . . . of the proceedings; and an objection timely made by a witness who has been informed of the right to refuse such exposure, shall preclude broadcasting.

The rule also vests in the trial judge the right to make the final decision as to "whether it would be fitting and proper to permit photographing and recording of trial proceedings." 271 Ark. at 361.

Appellant argues that he objected to the use of cameras in these proceedings and the activity should therefore have

been prohibited. The appellant is correct in his contention that an objection by one of the parties is sufficient to prevent any broadcasting or photography. Therefore it was error for the trial judge to disregard Canon 3 and permit the broadcasting. When the appellant offered his objection at the beginning of the trial, the judge ruled that he would allow the cameras in, but he stated, "If it becomes distracting to anyone, they should raise an objection at that time and I'll take care of it at that time." Subsequently the appellant did not object.

The appellant acquiesced in the trial judge's ruling by failing to make further objections during the course of the trial. In this instance, the error was rendered harmless. The bench and bar should be on notice however that this court will closely scrutinize any further violation of this rule.

The sixth assignment of error is the trial court's denial of appellant's motion for mistrial when it was revealed that two jurors watched television news accounts of the trial contrary to the court's instructions.

The trial judge has wide discretion in dealing with a motion for mistrial and we do not reverse absent a manifest abuse of that discretion. *Garner* v. *Finch,* 272 Ark. 151, 612 S.W.2d 304 (1981).

We find no such abuse of discretion here. The two jurors who watched the news account testified that all they saw was a picture of Rick Nelson and they heard that the trial was taking place after four years. The court admonished the jurors to disregard what they saw and decide the case only on what was presented in court. The appellant failed to demonstrate any prejudice as a result of the juror's actions.

The seventh issue in this appeal concerns the trial court's failure to dismiss appellee's cause of action because he failed to register with the secretary of state as a professional fund raiser and because he allegedly contracted to charge more for his services than allowed by the law. This argument is also without merit.

The appellant is contending that the appellee's failure to comply with the statute made the contract illegal and therefore unenforceable. Illegality of a contract is an affirmative defense which under Ark. R. Civ. P. 8(c) must be specifically pled. The appellant instead raised this issue in a motion for a directed verdict.

Substantively, the argument also must fail. The requirements cited by the appellant are contained in Ark. Stat. Ann. §§ 64-1608 — 64-1615 (Repl. 1980). These statutes require "any person acting as a professional fund raiser for any charitable organization to register with the Secretary of State", § 64-1609; require all contracts between the fund raiser and the organization to be in writing, § 64-1610; and provide that no such contract shall allow the fund raiser to receive more than 25% of the money collected. *Id.* These are the provisions the appellant claims the appellee violated.

A professional fund raiser is defined however by § 64-1608 as "any person who for compensation or any other consideration plans, conducts or manages in this state the solicitation of contributions for or on behalf of any charitable organization." The appellee was not soliciting contributions, he was promoting a concert and selling tickets, with the proceeds benefiting a charitable organization. The act is therefore inapplicable to him.

The next assignment of error concerns the trial court's failure to grant appellant's motion for summary judgment. The motion was based on the written contract which provided that any claim, dispute, or controversy arising under the contract shall be arbitrated by the international executive board of the American Federation of Musicians.

The appellant cites as authority a Louisiana case where Nelson failed to appear for a concert and the disagreement was submitted to arbitration by court order. *Hodges, d/b/a/ Old South Jamboree* v. *Rick Nelson, et al,* # 79-605-B (M.D. La. Aug. 20, 1981). That situation was distinguishable however, in that in Louisiana, there was a written signed contract and the issues to be resolved concerned who had the authority to sign for Nelson. Here, there was merely an

unsigned written contract and an oral contract between the appellant and the appellee, which the appellant breached. The appellee sued for breach of the oral agreement whereby appellant promised to provide Rick Nelson for the concert. It was the written contract which contained the provision calling for arbitration. That provision is therefore inapplicable. Furthermore, this case presents questions in the law of torts which are not subject to written agreements to arbitrate. *See* Ark. Stat. Ann. § 34-511 (Supp. 1983).

The ninth issue is whether the trial court erred in admitting a video tape of promotions for the muscular dystrophy association because it was irrelevant and so prejudicial as to outweigh its probative value.

The evidence consisted of interviews about the festival, news stories and public service announcements. The judge admitted the evidence for the purpose of proving promotion efforts by the appellee.

Rulings on the relevancy of evidence are discretionary with the trial court and we do not reverse absent an abuse of discretion. *Kellensworth* v. *State*, 278 Ark. 261, 644 S.W.2d 933 (1983).

No abuse of discretion is demonstrated.

The final argument presented by the appellant is that the trial court should have granted his motion for judgment notwithstanding the verdict (n.o.v.) because the verdict was for excessive damages and was apparently influenced by passion and prejudice.

We uphold the denial of a motion for judgment n.o.v. "if there is any substantial evidence to support the jury's verdict." *Arkansas Power & Light Co.* v. *Adcock*, 281 Ark. 104, 661 S.W.2d 392 (1983). The trial judge is to set aside a jury verdict only if he finds it to be against the clear preponderance of the evidence. *Pilkington* v. *Riley Paving Co.*, 271 Ark. 746, 610 S.W.2d 570 (1981).

We have previously commented on several aspects of the

evidence, particularly on the admissibility of damages based on lost profits, past and future. We therefore find that there was substantial evidence to support the verdict.

Affirmed.

Supplemental Opinion on denial of Rehearing delivered April 15, 1985

688 S.W.2d 275

JACK HOLT, JR., Chief Justice. The trial court committed error by permitting broadcasting of a certain portion of the trial proceedings in violation of Canon 3, Code of Judicial Conduct. When an objection was made at the beginning of trial, the judge ruled that he would allow the cameras in, but he stated, "if it becomes distracting to anyone, they should raise an objection at that time and I'll take care of it at that time." Subsequently there were

no objections. We unanimously held that the appellant acquiesced in the trial court's ruling by failing to make further objections during the course of the trial and that in this instance, the error was rendered harmless. We further advised the bench and bar that they should be on notice that this court will closely scrutinize any further violations of this rule.

On rehearing some of our members have changed their minds and now think that violation of this rule mandates reversible error, without exception.

The majority is deeply concerned over the trial court's obvious violation of Canon 3 which reads in pertinent part: "(b) an objection timely made by a party or attorney shall preclude broadcasting . . . of the proceedings; and an objection timely made by a witness who has been informed of the right to refuse such exposure, shall preclude broadcasting."

Although the rule also vests in the trial judge the right to make the final decision as to "whether it would be fitting and proper to permit photographing and recording of the trial proceedings," 271 Ark. 361, the trial court is without discretion when timely objection is made. In this instance, the appellant made timely objection.

It is the opinion of the majority that the warning contained in *Ford* v. *State,* 276 Ark. 98, 663 S.W.2d 3 (1982), where we said:

[a] willful disobedience of this Canon would, no doubt, be dealt with in an appropriate manner which could go so far as to cause a retrial of the case or result in other action by this court

does not mandate automatic reversal. Had the record in this case hinted of any prejudice to the appellant by the presence of cameras within the courtroom, reversal would be in order. Absent any prejudice, to reverse and remand as punishment to the trial court would not justify the time and expense for all parties and the court system to relitigate this matter.

We have repeatedly said that a mistrial is a drastic remedy, only to be granted when no other remedy exists. *L. L. Cole & Son, Inc.* v. *Hickman,* 282 Ark. 6, 665 S.W.2d 278 (1984). That is a fair standard to apply to our decision. No longer is error presumed to be prejudicial. A litigant is entitled to a fair trial — not a perfect one. *Berna* v. *State,* 282 Ark. 563, 670 S.W.2d 435 (1984). Here, justice has been done.

In our initial opinion we placed the bench and bar on notice that we would closely scrutinize further violations of this rule. In light of the present attitude of the court, we think it is safe to say this supplemental opinion shall constitute notice that further violation of this rule will not be tolerated to any degree, and that reversal may well be automatic, rather than a matter of scrutiny for possible prejudice.

Rehearing denied.

PURTLE, DUDLEY and NEWBERN, JJ., would grant.

HAYS and HICKMAN, JJ., concur.

STEELE HAYS, Justice, concurring. Before we take a hard line on the enforcement of the rule pertaining to cameras in the courtroom, we ought to examine the rule itself, now in its fifth year, to see if some relaxation is in order. A rule that requires the approval of opposing litigants is almost no rule at all, as experience teaches that adversaries in a lawsuit rarely agree on anything.

An overwhelming number of states have sensibly left the decision regarding cameras where it should be, subject to the discretion of the trial judge. (See Journal of the National Center for State Courts, Volume 9, No. 1, p. 5, for a list of some forty states permitting media coverage and the six states requiring the approval of both parties.) We ought to consider joining the majority, at least with respect to civil trials.

HICKMAN, J., agrees.

DAVID NEWBERN, Justice, dissenting. Rehearing should be granted. I was uncomfortable form the outset with the approach taken by our decision on the point of courtroom television. The essence of our opinion was that it was not reversible error to allow television photography in the courtroom after a timely objection but that it should never again be allowed. While I can appreciate an opinion which warns we may someday *change* a rule, I cannot appreciate an opinion saying we may someday *enforce* a rule.

The petition for rehearing made me wish I had dissented to the opinion. The petition correctly points out that a lawyer ought not be required to object more than once to a clear prospective violation of a rule, especially when the rule says a timely objection is all that is required. I am troubled by the fact that the colloquy between counsel and the court which was the entire basis of the appellant's argument on this point was not abstracted. However, as the objection and the court's ruling are recounted in the arguments in both parties' briefs, as well as in our opinion, I will not be dissuaded by that lapse from expressing my concern.

According to the briefs of both parties, counsel for the appellant objected on the morning the trial began to having the trial televised. Rather than keep the trial from being televised, the judge invited counsel to object again if the cameras became distracting.

The original modification of Canon 3(A)(7) of the Code of Judicial Conduct permitted broadcasting and photographing certain court proceedings upon written consent of all participating attorneys, parties and witnesses. Re: *Petition of Arkansas Bar Association,* 271 Ark. 358, 609 S.W.2d 28 (1980). The Canon was modified again to permit these activities unless there is "an objection timely made by a party or attorney. . . ." The sole reason given for this modification was that it was "too burdensome to the trial court and to the interested people to require written consent." Re: *Modification of the Code of Judicial Conduct Relating to Broadcasting & Photographing Court Proceedings,* 275 Ark. 495, 628 S.W.2d 573 (1982). As this change

was made solely to solve the administrative problem mentioned, it did nothing to alter the spirit of the previous *per curiam* order on the subject which was very protective of trial participants while attempting also to secure the rights and needs of the press and the public.

The majority seems satisfied with the fact that our opinion gives a warning to trial judges that we will not permit them to admit television cameras over objection in the future. How many times must we give that warning? In *Ford* v. *State*, 276 Ark. 98, 633 S.W.2d 3 (1982), a criminal case, we said,

> Canon 3(A)(7) of the Code of Judicial Conduct prevents cameras in the courtroom without the consent of the accused. . . . Our rule has been somewhat relaxed since the date of this trial. The rule was not placed into effect to be ignored by the courts.
>
> . . .
>
> A willful disobedience of this Canon would, no doubt, be dealt with in an appropriate manner which could go so far as to cause a retrial of the case or result in other action by this court. (276 Ark. at 111-112; 663 S.W.2d at 11)

We went to the trouble of expressing our feelings that strongly in a case in which no objection was made until the trial was over except for the sentencing phase. We should be much more concerned here where the objection was indeed timely, but all we do is issue another warning.

The supplemental opinion of the majority points out that the case has been tried and a result reached which we should not overturn because the "time and expense for all parties and the court system" would be unjustified. The appellant's position is ignored in this assessment. If we refused to reverse because of those considerations, the need for this court would vanish.

In our original opinion we said the appellant's counsel

had acquiesced in the ruling of the court. The next sentence said "[i]n this instance the error was rendered harmless." In the supplemental opinion the majority seems to be saying the appellant must demonstrate "prejudice." The shift in rationale is subtle but needs to be dealt with.

A litigant denied a public trial need show no prejudice for reversal. *Sirratt* v. *State*, 240 Ark. 47, 398 S.W.2d 63 (1966). See also *Taylor* v. *State*, 284 Ark. 103, 679 S.W.2d 797 (1984). Neither should a litigant who has objected to cameras in the courtroom have to show prejudice. Counsel, having made an objection, should not be put in the position of having constantly to observe for distractions caused to jurors, witnesses and the court by the presence of television cameras. Counsel should be allowed to devote his or her entire effort to the presentation of the client's case. The record here showed that jurors watched news reports of the trial. We cannot know what prejudice may have been caused. The point is that the rule requires automatic exclusion upon objection so that counsel will not later be placed in the position of finding and urging "prejudice" which is so obviously elusive in this context.

In *KARK-TV Channel 4, Inc.* v. *Lofton*, 277 Ark. 228, 640 S.W.2d 798 (1982), we expressed the balance struck by the U.S. Supreme Court, an followed by us, between the protection of litigants and the judicial system vis a vis the protection of the rights of the press and public to information generated by trials. I believe the path has been well charted, and I do not believe we should vary from it. If we do, it should be by consciously taking a new direction and not through the odious process of erosion which will result from violations, warnings and then more violations and more warnings.

I respectfully dissent from the refusal to grant rehearing. I would grant rehearing and remand for a new trial.

DUDLEY and PURTLE, JJ., join in this dissent.