Loraine SLEDGE *v.* Harry L. MEYERS and Bestline, Inc.

90-235                                                    801 S.W.2d 650

Supreme Court of Arkansas
Opinion delivered January 14, 1991

*John H. Adametz, Jr.,* for appellant.

*Friday, Eldredge & Clark,* by: *James C. Baker, Jr.,* for appellees.

ROBERT H. DUDLEY, Associate Justice. The only issue in this car-truck accident case is whether the trial court committed reversible error in refusing to allow a qualified state trooper to testify about the point of impact. We hold there was reversible error.

The accident occurred in the westbound lanes of Interstate 40 in North Little Rock. The appellant, Loraine Sledge, was proceeding west in the outside lane in a car owned by her husband. The appellee truck driver, Harry Meyers, was proceeding west in the inside lane in appellee Bestline, Inc.'s truck. The truck driver was signaling to change to the outside lane. The front right side of the truck hit the rear left of the car. At trial, the car driver testified

that she never crossed over into the inside lane. The truck driver, and another truck driver who was following, testified that the truck never crossed over into the outside lane. Thus, the crucial issue was, which vehicle crossed over into the other's lane?

In her case-in-chief, appellant, the car driver, called State Trooper June Carmen as her witness. Trooper Carmen testified that she had been a police officer for nine years, five years as a trooper and, before that, four years on the Greenwood police force. While a trooper she successfully completed a thirteen-week course on accident investigation and reconstruction and, while with the Greenwood police department, successfully completed a three-week course on accident investigation. She testified that she had investigated more than 110 accidents each year since becoming a trooper, and had testified many times in both civil and criminal cases. The trooper then testified that she investigated the accident by starting with the position of the wrecked vehicles and tracing the skid and scuff marks to the initial point of impact. She said, "We could see how they . . . we call it a scuff mark or . . . ." The truck driver's attorney interrupted and objected to "speculative reconstructionist testimony." The trial court did not clearly rule on the objection, but, instead, responded: "Don't use that word 'we could see' there and tell what you saw." The following then transpired:

Q.  (By Mr. Adametz) [Appellant's attorney] Go ahead, Ms. Carmen.

A.  We located scuff marks and could see the line that the vehicle was carried straight.

Q.  A minute ago you used the term "area of impact." Tell the jury what the area of impact is, please.

A.  Area of impact is what I locate as where the vehicles first make contact.

Q.  And did you determine that area?

A.  Yes, sir, I did.

Q.  And where was that area?

A.  Approximately four inches over the centerline.

Q.  Which lane was that in?

A.   It would be in the right-hand lane, sir.

Q.   That would be the lane that's away from the median?

A.   Yes, sir.

Q.   Go ahead, please.

A.   The vehicle was carried approximately 677 feet underneath. You would be going eastbound — westbound. It would be carried underneath the bridge, in all total approximately 677 feet that it was carried before it finally came to rest in the left-hand lane.

Q.   They came to rest in the left-hand lane.

A.   Yes, sir.

Q.   So it is your belief then that the accident started in the right-hand lane at least four inches over the centerline?

THE COURT:   That's what he objected to, Mr. Adametz. I sustained the objection. You may cross-examine. I thought you were through with the witness.

Prior to 1983 our law was that a police officer should not be able to state his conclusions about the point of impact, or location of the vehicles, based upon the officer's examination of the skid marks, scuff marks, or debris because it was not beyond a jury's ability to understand those facts and draw its own conclusions. *S & S Constr. Co.* v. *Stacks*, 241 Ark. 1096, 411 S.W.2d 508 (1967); *Reed* v. *Humphreys*, 237 Ark. 315, 373 S.W.2d 580 (1963). In 1983, in *Smith* v. *Davis*, 281 Ark. 122, 663 S.W.2d 165, we changed our position and wrote:

Where an officer investigates a vehicle accident, observes sufficient relevant evidence such as skid marks, debris from the vehicles, position of the vehicles, or makes other observations, and where he can rationally form an opinion about the point of impact, he should be allowed to testify as to that opinion.

Subsequently, in *Ferrell* v. *Southern Farm Bureau Cas. Ins. Co.*, 291 Ark. 322, 724 S.W.2d 465 (1987), we expressly said a qualified trooper could state "who crossed over a center line." Thus, the trial court erred in ruling that the trooper could not

state her opinion about the location of the vehicles at the moment of impact.

■ We no longer presume error to be prejudicial. *Jim Halsey Co., Inc.* v. *Bonar*, 284 Ark. 461, 688 S.W.2d 275 (1985). A good part of the time devoted to this case at our decisional conference was spent in discussing whether the error was harmless or prejudicial. Preponderating against prejudice is the trooper's testimony that the area of impact, or place of first contact, was four inches over into the outside, or car's, lane. Surely, most jurors would know that the trooper was testifying, in her opinion, the truck was at least four inches over into the car's lane, and no harm resulted from the later ruling. However, after that testimony, the trial court, on its own motion, stated, "I sustained the objection to that testimony." As a result, the jurors quite possibly thought they should not consider the trooper's statement, and, since the subject of the testimony was the most crucial issue in the case, prejudice most likely occurred. Accordingly, we reverse and remand.