EMPLOYERS INSURANCE of WAUSAU *v.*
DIDION MID-SOUTH CORPORATION

CA 98-444                                                987 S.W.2d 745

Court of Appeals of Arkansas
Division II
Opinion delivered March 3, 1999

*Wright, Lindsey & Jennings LLP,* by: *Roger A. Glasgow, Troy A. Price,* and *Judy Robinson Wilber,* for appellant.

*Everett & Mars,* by: *David D. Stills* and *John C. Everett,* for appellee.

JOSEPHINE LINKER HART, Judge. Employers Insurance of Wausau appeals from a jury verdict in favor of appellee, Didion Mid-South Corporation, finding that appellant breached its fiduciary duty to appellee and assessing damages of $200,000. against appellant. For reversal, appellant contends as follows:

1. As a matter of law, no fiduciary duty may be imposed on contracting parties where the fiduciary duty is contrary to the terms of their contract; and,

2. As a matter of law, even if some fiduciary duty exists, the terms of the contract control the rights and obligations of the parties; and,

3. As a matter of law, there was no evidence to support the damages awarded by the jury.

We disagree and affirm.

## I. Background

Appellee, Didion Mid-South Corporation ("Didion"), is a foundry operation that makes castings for the automobile and agriculture industries. Appellant, Employers Insurance of Wausau ("Wausau"), is an insurance company that provides workers' compensation coverage to employers. In 1990, Didion was required to participate in the Arkansas Assigned Risk Pool in order to obtain workers' compensation coverage. Once Didion was placed in the pool, it was involuntarily assigned Wausau as its workers' compensation carrier. Likewise, Wausau was involuntarily assigned Didion as its insured. As a member of the assigned-risk pool, Didion had no bargaining power with regard to the amount of premiums to be paid for its workers' compensation coverage nor was it allowed to negotiate the terms of the policy.

The insurance policy was an assigned-risk policy administered by the National Council on Compensation Insurance

("NCCI"). NCCI is a rating and statistical organization approved by the Arkansas Insurance Department and appointed as residential market plan administrator for the state. NCCI performs the rating, the premium calculation, and the initial billing on workers' compensation policies issued through the assigned-risk pool. Premiums paid by employers to insurers are calculated to match the exposure to pool·insurers based on NCCI's statistical analysis of certain factors, such as the type of business of the insured, the number of employees, the insured's location, the dollar amount of the payroll, and the insured's previous claims experience. The claims experience is one element of the employer's "experience modification factor" or "MOD." The MOD is a prospective adjustment to account for the prior claim experience of the insured. The MOD for Didion was calculated by NCCI's actuaries, who apply a complex formula taking into account the frequency and severity of losses, the job classification, the expected losses for unsettled claims, and the loss experience of other businesses. The MOD factor is incorporated into the premium calculation. At the time Didion entered the pool, its MOD was 1.08. Didion continued in the pool until 1994. During that time period, Didion's MOD rose to 2.03. Subsequent to Didion leaving the pool, its MOD dropped to 0.67.

A modified premium was derived by multiplying the established premiums for Didion by its MOD factor and adding applicable fees and a surcharge to offset the carrier's expenses for participation in the pool. Wausau, as a carrier insuring an employer assigned to the pool, received premiums equal to or greater than the money expended to pay claims and costs. Additionally, Wausau received a servicing fee that equaled twenty to thirty percent of the premiums charged Didion. A new premium was applicable prior to the renewal of the Didion policy each December.

The insurance contract between Wausau and Didion provided Wausau the "right and duty to defend at its expense any claims, proceedings or suits . . . [and] the right to investigate and settle these claims, proceedings or suits." During the time Wausau insured Didion, there were approximately 345 claims filed against Didion. None of the claims went to trial, and each claim was

settled by Wausau and its attorney. Four claims made up fifty-seven percent of all monies paid. Didion requested that Wausau investigate the four claims and sought to have them tried before an administrative law judge. All requests of Didion were ignored by Wausau.

Upon termination of the parties' relationship in 1994, a payroll audit of Didion was performed. Didion owed an upward revision of the estimated premium for the policy year ending in 1993, as well as for the monthly coverage provided in 1994. When Didion failed to pay, Wausau filed suit for $81,515 in unpaid premiums and fees. Didion counterclaimed, contending that Wausau's mismanagement of the claims against it caused Didion's MOD to rise, resulting in unnecessary premiums in excess of $585,000.

## II. Argument Not Made Prior to Appeal

In its request for judgment notwithstanding the verdict, appellant, citing *Southern Farm Bureau Cas. Ins. Co. v. Parker*, 232 Ark. 841, 341 S.W.2d 36 (1960), acknowledged that "[u]nder some circumstances, an insurance company might owe a fiduciary duty to its insured." Appellant went on to argue that "there can be no breach of fiduciary duty for doing that which the contract allows one to do." Appellant, before and during trial, argued that it was an error as a matter of law to place obligations, fiduciary or otherwise, upon it that were contrary to the express provisions of the contract between it and appellee. On appeal, however, appellant expands this argument to indicate that *Parker* represents "an insufficient basis on which to adopt a new cause of action [for breach of fiduciary duty] against insurance companies." At trial, appellant argued that the duties of a fiduciary cannot be reconciled with the contractual rights of an insurer; on appeal, a new argument was added that emphasized that an insurer with respect to its insured should, as a matter of law, never be considered a fiduciary.

We do not address issues that are raised for the first time on appeal. *Dellinger v. First Nat'l Bank of Russellville*, 333 Ark. 460, 970 S.W.2d 223 (1998); *Barber v. Watson*, 330 Ark. 250, 953 S.W.2d 579 (1997); *Holloway v. Stuttgart Reg'l Med. Ctr.*, 62 Ark.

App. 140, 970 S.W.2d 301 (1998). Accordingly, we limit our review to the issue raised at the trial level.

### III.   Breach of Fiduciary Duty

Wausau did argue at trial the question of whether the contract determined its rights and obligations and whether the contract extinguished the fiduciary duty, if any, owed to Didion. We cannot agree with appellant that, as a matter of law, a contractual term will vitiate a fiduciary duty, should such fiduciary duty be found to exist. Appellant relies solely upon *St. Joseph's Regional Health Ctr. v. Munos*, 326 Ark. 605, 934 S.W.2d 192 (1996). In *Munos*, a majority of the partners in a business voted to replace one of the partners, Munos, as manager of the business. Munos had been employed as manager subject to a separate employment agreement that designated him an independent contractor. *Munos* did not involve a conflict between contractual and fiduciary obligations. The court simply found that there was insufficient proof to show that the partnership had violated the contract or that the partners had violated their fiduciary duties to Munos.

In *Sexton Law Firm v. Milligan*, 329 Ark. 285, 298, 948 S.W.2d 388, 395 (1997)(citations omitted), the Arkansas Supreme Court stated:

> [R]egardless of the express terms of an agreement, a fiduciary may be held liable for conduct that does not meet the requisite standards of fair dealing, good faith, honesty, and loyalty. The guiding principle of the fiduciary relationship is that self-dealing, absent the consent of the other party to the relationship, is strictly proscribed.

The evidence presented at trial supports appellee's argument that it was in Wausau's financial self-interest to settle the claims made against Didion. Also, the evidence supports a 'conclusion that the more money Wausau paid to claimants, the more money Didion paid Wausau in premiums and servicing fees. Kathy Booth, a witness for Wausau, testified that a new business will start at a 1.0 MOD factor. She testified that the MOD factor determines the premium and that an employer could lower its MOD by controlling the number and severity of its losses.

The testimony introduced at trial by Didion showed that despite repeated demands that its claims be investigated, Wausau's assigned attorney took only one deposition in one of the claims. Gene Didion testified that his company would routinely conduct its own investigation of claims. With regard to four claims presented at trial by Didion to show mishandling of claims (that constituted over half of Didion's payouts), the company determined, and informed the insurer, that no work injury had occurred. According to the testimony of Didion employees, the response of Wausau's employees was that Didion didn't pay the bills, it wasn't Didion's responsibility to fight the claims, and Didion shouldn't care because it was Wausau, not Didion, that paid the claims.

Furthermore, Didion presented expert legal testimony and other evidence in support of its contention that Wausau and its agents improperly handled claims against Didion. On appeal, a jury's finding will be affirmed if there is sufficient evidence to support the finding. *Taylor v. Terry*, 279 Ark. 97, 649 S.W.2d 392 (1983). This and other evidence presented at trial was more than sufficient to support the jury finding that Wausau had breached a fiduciary duty to the insured.

Therefore, without deciding the issue of whether a fiduciary duty always exists between an insurer and its insured, there was sufficient evidence present under the facts of this case to support the finding of the jury that Wausau breached its fiduciary duty to Didion. Wausau assumed no risk. It was reimbursed for all costs and payments made for Didion's workers' compensation claims. Plus, it received a 20% to 30% premium above that total cost. The no-risk posture of Wausau eliminated any reason or need for Wausau to pursue any self-protective measures and left Wausau with only one duty — the duty to act in the best interest of its insured. This situation is unlike those in which insurers issue policies that assume a monetary risk, resulting in competing interests to protect.

Not only were Wausau's contractual duties and fiduciary duties compatible, both duties obligated Wausau to act solely for the best interest of Didion. There was ample proof upon

which the jury could find that Wausau breached a fiduciary duty to Didion while at the same time finding that it had not breached its contractual obligations.

## IV. Evidence Supporting Damages

█ Appellant argues that the damages are not supported by the evidence. On appeal this court views the evidence in the light most favorable to the appellee and affirms if there is substantial evidence to support the jury's verdict. *American Fidelity Fire Ins. Co. v. Kennedy Bros. Const.*, 282 Ark. 545, 670 S.W.2d 798 (1984).

█ Arkansas law has never required exactness of proof in determining damages, and if it is reasonably certain that some loss occurred, it is enough that damages can be stated only approximately. *Morton v. Park View Apts.*, 315 Ark. 400, 868 S.W.2d 448 (1993); *Jim Halsey Co. v. Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985). "The fact that a party can state the amount of damages he suffered only approximately is not a sufficient reason for disallowing damages if from the approximate estimates a satisfactory conclusion can be reached." *Halsey*, at 468, 683 S.W.2d at 903.

The evidence showed that the premium dollars paid by Didion during its tenure with Wausau increased correspondingly with the increase of its MOD factor. Gene Didion presented a mathematical computation comparing what Didion's insurance premiums actually were under Wausau with what the premium would have been had the MOD been 1.00 during the time he was insured by Wausau. The amount of damages as calculated by Didion totaled $487,194, and the amount awarded by the jury was $200,000. Mr. Didion also testified that his MOD was historically running below 1.00 prior to Didion's coverage being written by Wausau, and the MOD was 1.08 when coverage under Wausau commenced. Wausau does not controvert or explain why Didion's MOD increased during the time period of coverage under Wausau and declined after Didion obtained workers' compensation insurance with another company.

█ In considering the evidence concerning damages, we have held that recovery should not be denied merely because the

damages are difficult to ascertain or based on approximations. *Morton, supra; Halsey, supra; Taylor v. Green Mem'l Baptist Church*, 5 Ark. App. 101, 633 S.W.2d 48 (1982). From the evidence presented, the jury could reasonably have concluded that the cause of the surge in the MOD factor was the mishandling of the claims by Wausau. Further, in setting its damage award, the jury was free to determine the difference between the amount of premiums paid by Didion and the amount of premiums Didion would have paid if Wausau had not breached its fiduciary duties.

We cannot say on appeal, nor has appellant shown, that there was not substantial evidence to support the verdict.

Affirmed.

ROBBINS, C.J., and JENNINGS, J., agree.